## MACOMBER *vs.* MARY DUNHAM.

A *loan company* authorized by its charter to loan money upon pledges of goods and chattels, and to charge interest for a *full month*, where the loan is for a period over 15 days and less than one month, is not entitled, where a loan made for *twenty days* remains unpaid, to demand interest at the same rate for any subsequent time ; the interest on the debt due at the expiration of the twenty days must be computed as on ordinary contracts.

Where, after the expiration of *twenty days*, interest was charged for a subsequent period at the same rate, and a promise for the payment thereof exacted and made at the same time that a bond was taken for the *sum actually lent*, IT WAS HELD, that the interest thus computed was *usurious*, and that the agreement for the payment thereof, although not included in the bond, rendered the bond void for usury.

THIS was an action of debt on bond, tried at the New-York circuit in December, 1829, before the Hon. OGDEN EDWARDS, one of the circuit judges.

The suit was on a *joint* and *several* bond executed by the defendant, by David R. Dunham and two others, bearing date 12th May, 1826, conditioned for the payment of $6,700, with lawful interest, on the 13th October ensuing the date of the bond.   The execution of the bond was duly proved, and that it was taken for the benefit of the Mount Hope Loan Company. The plaintiff rested.   On the part of the defendant it was shewn, that on the 3d December, 1825, *David R. Dunham*

obtained a loan of $6,708,$\frac{40}{100}$ of the Mount Hope Loan Com-
pany for *twenty days*, and paid interest on the same up to the
21st, February, 1826, computing the time as *four months*, i. e.
*twenty days* to a month.   The loan was secured by a bond, in
which the defendant was a surety.   On the 12th May, 1826,
it was agreed between the parties that a new bond should be
executed for the *sum actually lent*, so as to avoid the question
of *usury*, and the bond now in suit was executed; but during
the negotiation a statement was exhibited by the agent of the
Mount Hope Company, in which interest was charged upon the
original loan of $6,708,$\frac{40}{100}$ from 21st February to 12th May,
1826, upon the basis of *twenty days* to the month, amounting
to $156,52; and there was also a charge of $1,00, 70 for the
interest of $6,700, *over and above* the rate of seven per cent.
per annum, ascertained by a similar calculation of *twenty days*
to the month, from the 12th May to the 13th October, when
the bond should become due, making, together, the sum of
$257,22; which sum the agent of the Mount Hope Loan
Company demanded should be paid, *in addition to the bond;*
and the agent of the debtors *promised*, in behalf of David R.
Dunham, that such sum should be paid by David R. Dun-
ham, who subsequently promised to pay it, and was called up-
on for payment of the same by the agents of the company.
The agent for the debtors testified that he understood that the
sum of $257,22 included only *back interest*, and did not ob-
serve, until some time after the negotiation, that it included
*prospective interest*, and that he never knowingly or understand-
ingly agreed that Dunham should pay any prospective inter-
est.   The cause was submitted to the jury, who found a ver-
dict for the *plaintiff*.   The defendant moved for a new trial.

*H. W. Warner & D. B. Ogden*, for defendant.

*S. A. Foot & S. P. Staples*, for plaintiff.

*By the Court,* NELSON, J.   The Mount Hope Loan Com-
pany was chartered the 18th April, 1825.   Laws of 1825, p.
296.   The sixth section of the act of incorporation prescribes
the rates of interest the company are authorized to receive up-

on pledges of goods and chattels to be deposited with them as security for loans made, to wit: On all sums under *one dollar*, loaned *to the poor*, no interest; on all sums under $50, 12 per cent.; above $50, and under $100, 10 per cent.; above $100, and under $200, 9 per ct.; above $200, and under $500, 8 per cent.; above $500, 7 per cent.; " and that in all cases where the terms of the loan shall be less than fifteen days, it shall be lawful for the said corporation to charge an interest as aforesaid for half a month, and when such term shall exceed fifteen days, but be less than one month, it shall be lawful to charge an interest as aforesaid for a full month."

It is very obvious, upon looking into the several provisions of this charter, unless the company are confined strictly within its terms and import, instead of being what it assumes to be, a public benefit, it will become a mere instrument in the hands of the directors to legalize usurious exactions. The object, no doubt, of the charter was to facilitate loans to necessitous borrowers, and the extra interest beyond the established rate could have been intended for no other purpose than as an equivalent for the trouble of short loans, and the imperfect nature of the securities pledged for their payment. The sixth section, in terms, provides that loans *above* the sum of $500 shall be at the rate of 7 per cent. except in two specified cases, to wit: 1. Where the loan is short of fifteen days, interest may be charged for half a month; 2. Where the loan is above fifteen days, but short of a month, interest may be charged for a full month. Unless the loan in this case comes within one of these exceptions, there is no authority for charging over 7 per cent. interest. The loan was first made on the 3d December, 1825, *for twenty days*, and for that period the interest was rightfully charged for a full month. The loan then lay over without any understanding between the parties as to interest, till the 12th May, when the bond was given; and it is contended that an *implied agreement* is to be presumed that the interest was to be charged according to the terms upon which the loan was originally made, as twenty days for a month. Admitting this presumption well founded, it would not aid the plaintiff, for if it had been expressly agreed, when the loan was first made, that it should continue until the 12th May, and that

interest should be charged, calling twenty days a month, it would not have been a loan within the terms or meaning of the charter, but would have been a manifest fraud upon its provisions. The true and only rational interpretation of this transaction, however, is, that the loan which was made in December in pursuance of the charter, not being renewed when it became due, the interest upon the debt then due, like the interest upon every other debt which has fallen due, is to be regulated by the general law of the state on that subject.

The construction contended for by the plaintiff would give to the provisions of the charter, as far as the corporation are concerned, an effect and operation nearly tantamount to a virtual repeal of the statute against usury. All that would be necessary to acquire a right to the extra interest given, would be to make the first loan according to the terms of the charter, and then allow it to lie over for any given length of time, and ultimately calculate the interest at the rate of twenty days for a month. Even this usurious exaction might be greatly improved upon. For any thing in the charter to the contrary, a loan of $499 for one day would entitle the company to charge interest at the rate of 8 per cent., calling the one day half a month ; and any sum over $500 might be loaned for one day, and an interest of 7 per cent. charged, calling the one day half a month. All this the company may do, within the terms and privileges of the corporation ; but according to the construction contended for by the plaintiff, if a loan upon the above terms lay over for any length of time within the period of the statute of limitations, interest could be charged after that rate during the whole period. Such an interpretation would be entirely gratuitous in the court, and against the express terms of the charter. It is only "where the terms of the loan shall be less than 15 days, or where the terms of the loan shall exceed 15 days, but be less than a month," that interest is allowed in the first instance for half a month, and in the second for a full month. It is absurd to call the debt in this case a loan for twenty days, or for any length of time after the expiration of the first twenty days. How could it be a loan for any period after that time, when the plaintiff could have prosecu-

ALBANY,
Jan. 1832.

Macomber
v.
Dunham.

ted and collected his debt at any moment after the expiration of the first twenty days, down to the time the bond was given? One would suppose the terms of the charter were sufficiently liberal on the subject of interest, but whether they are or not, I apprehend courts will not be over studious to find reasons for enlarging its powers by construction.

It is said the eleventh section of the act, which provides for a sale of the goods and chattels pledged, authorizes the collection of interest on the loan, from the default to the time of collection, upon the principles contended for by the plaintiff in this case. Admitting it to be so, it by no means follows that such construction is to be applied in all the cases under the act, and at present, I do not assent to the construction thus assumed of this section. It is, however, unnecessary to pass upon that question.

Without examining this part of the case further, I am satisfied that the interest was erroneously computed from the 21st February to the 12th May, 1826; and though the extra interest was not included in the bond, yet the agreement to pay it as a condition of the loan, avoids the bond, the same as if it had been included in the condition. I am also satisfied the *prospective interest* which was computed and required to be paid was also sufficient to avoid the bond, on the ground of usury. Though the agent of D. R. Dunham supposed, when he promised to pay the $257,22 extra interest, no prospective interest was included, and that the whole was back interest, this circumstance cannot vary the effect of the agreement or promise to pay, as the items of the computation were before him, and it was his own fault if he did not examine them. Had the agreement been legal, his principal would have been bound; it would have been a valid promise, within established principles. It was, in, fact and law, a perfect promise to pay more than the legal rate of interest for a loan of money.

New trial granted.