By the Court.
Duer, J.
—It is not necessary to deny that the liability of an endorser is governed, in all cases, by the law of the place where the endorsement is made, provided we understand by endorsement, the contract itself, not the mere act of writing the name upon the back of the instrument; and such, we cannot doubt, is the meaning of the rule. The liability of an endorser arises solely from his contract, and it is his contract that the local law defines, and controls. It matters not, when or where his name may have been endorsed, literally speaking, since there is no endorsement, binding him as a con *338 tract, of the promissory note, or bill of exchange, on which his name appears, until it is transferred to a third person, with the intent of enabling him to enforce its payment. The place of this effectual transfer, is, therefore, the place of the contract, and the law which there prevails, that which governs its construction. In this case, there Avas no transfer of the promissory notes upon which the action is founded, at Detroit; so long as they remained there, there Avas no contract creating any liability on the part of the defendant. There was no transfer of the notes, until they arrived in this city ; no contract, until they were accepted here by Ryckman, the first endorser, in satisfaction of a debt. It is plain that the defendant was an accommodation endorser’, and when he returned the notes, Avith his name, to the maker, as no restriction was imposed, he gave him an unlimited authority to use them for any purpose that his convenience and interest might require. In judgment of law, therefore, it Avas by the authority, and with the consent of the defendant, that the notes Avere passed into the hands of Ryckman, and the agent Avho made the transfer Avas his agent, as avcII as of the maker. As qui facit per alium facit per se, the endorsement, as a contract, Avas just as certainly made in this city, as if the transfer Avhich gave a title, had been made here, by the defendant in person. Hence, it is needless to inquire, whether the notices sent to the defendant, Avere sufficient to charge him as an endorser, according to the laAV of Michigan, as lately expounded by its supreme court, since the law of this state, not that of Michigan, is the “ lex loci contractusthat we are bound to follow.
Adopting then our own law, as the rule of decision, it seems to us, that the right of the plaintiff, to maintain this action, cannot reasonably be doubted. We deem it quite unnecessary to cite authorities, to prove that, in this state, the laAV is settled, that every notice to an endorser must be deemed sufficient, which expressly, or by a reasonable intendment, conveys to his mind all the information that he is entitled to have; and that where no doubts are raised by extrinsic facts, the question of its sufficiency is to be determined exclusively by the court. Where there are no disputed facts, it is purely a question of law.
• The information, which, in an action against the endorser, it *339 must be proved, was given, is that of the dishonor of the particular note upon which the action is founded. The notice of protest must therefore contain such a description of the note, as might have enabled the endorser to ascertain its identity, and must also communicate the fact of its dishonor ; that is, that on the day when it fell due, payment was demanded and refused.
We are to inquire then, whether these requisites are found in the notices that were given in evidence upon the trial; and for the present, we coniine our remarks to the notice relating to the first of the four notes that fell due—that payable nine months after date. The description of the note, it must be admitted, is not complete, since it omitted to state the time when, and the place where, it was payable; but these omissions are quite immaterial, if the facts, which are stated, are alone sufficient, to convey all the necessary information. It is not to a stranger, it must be remembered, that the notice is addressed, but to a person, whom the law presumes to have had a distinct recollection of the tenor of every note, then outstanding, which he had endorsed, and the question is, whether, with this knowledge, he could have experienced any difficulty in referring the notice to the particular note that was intended. The notice states, expressly, the date of the note, the name of the maker, the sum for which it was given, and that it bore interest, and by implication, that it was payable in this city, since it was from this city that the notice of its protest was sent; and in all these particulars, the notice corresponds exactly with the note in evidence, and which the defendant knew he had endorsed. Hence, unless the defendant had endorsed other notes, one or more dated on the same day, for the same maker, for the same sum, payable with interest, in this city, and at the same time, it is impossible, that even a momentary doubt could have been entertained by him, as to the particular note that the notice described. He knew, at once, that it was the note in suit, if there was no other to which this description could possibly apply.
These observations are not answered by saying, that the defendants muy have endorsed other notes of the like tenor, and that an uncertainty in the application of the notice, may thus have arisen. We have no right to act upon such a presumption. If such was the fact, it was in the power of the defendant to- *340 prove it, and it was upon Mm that the law cast the burden of proof. As the proof has not been given, the maxim applies that “ de non apparentibus et non existentibus, eadem est ratio.”
In the case of Shelton v. Braithwaite (7 Mees. & Wels. 436), the notice of the dishonor of an inland bill of exchange, given by the holder to the drawer, contained no other description of the ■bill, than this, “your draft on A. B.'is dishonored,” yet-the judges of the exchequer were unanimously of opinion, that the notice, taking into consideration the previous knowledge of the defendant, was sufficient to charge him. . The ground of the decision was, that when an uncertainty in the application of a notice, arising from extrinsic facts, is alleged to exist, the burden of proof lies upon the defendant; the existence of such facts will never be presumed. In the particular case, it was said by Baron Alderson, and similar remarks were made by the other judges, that if the defendant had drawn any other bill upon A. B., which was then outstanding, the fact and the means of proving it, were peculiarly within his knowledge, and it was by him that the proof ought to have been given. In the absence of contradictory proof, it was a reasonable inference that there was no other bill, than that declared on, to which the description in the notice, could apply. This decision was followed in the same court, in Stockman v. Parr (11 Mees & Wels. p. —), and both these cases are cited with approbation, by Mr. Justice Jewett, in delivering the judgment of the court of appeals, in the case of the Cayuga Bank v. Worden, (1 Comst. 414.)
The other objections to the sufficiency of the notice, that it states neither the day, nor the place, of a demand of payment, nor indeed, that such a demand was made at all, will be disposed of in few words. As the defendant must have known that the notice related to the first of these notes that fell due, we are bound to say, that he also knew on what day and at what place it was payable ; and an express communication of' these fa.cts, was, therefore, useless. And that a demand of payment was made on the proper day, and at the proper place, and was refused, are facts, which by a necessary implication, were communicated by the declaration, that the note “ was, on the day that the same became due, duly protested for non-payment.” It *341 is true, that a protest of a promissory note, is not, like that of a foreign bill of exchange, necessary to be made, in order to charge an endorser ; but it is equally so, that in all cases, where it is made, it not merely implies, but asserts, the existence of the facts, up on which alone it can properly be founded. A protest is a declaration in writing, made by a public officer, under his oath of office, that the bill or note to which it relates, was, on the day it became due, duly presented for payment, and that payment was refused ; and a notice of such protest, is not merely a notice that this declaration was made, but that the facts, so declared, had really occurred.
That such is the construction of the .no lice, when it relates to the protest of a bill of exchange, is not denied, and we own, that we are at a loss to understand, why the same construction should not be given to it, when it relates to the protest of a promissory note. That in the last case, a protest is unnecessary, neither alters the nature of the act performed, nor the intent and object of its communication to an endorser. When he is told that the note is protested, he is told, in language which he is bound to understand, that it is dishonored, for it is this sense that the usage of all' engaged in commerce has stamped upon the words. The decision of the supreme court of Michigan, in Platt v. Drake, (1 Doug. 296,) which we have been urged to follow, is directly opposed to that of the supreme court of the United States, in Mills v. Bank of the United States (11 Wheat. 431), and in our own courts, the language of judges, we believe, has uniformly been, that notice of the protest of a promissory note, is equivalent to notice of its dishonor. At any rate, it is this construction, that we consider as established beyond the reach of further question, by recent decisions in the court of appeals. (Coddington v. Davis, 1 Comst. 36; Cayuga Bank v. Worden, id. 414.)
The observations that have been made to prove the sufficiency of the first notice, apply with equal force to each that follows. They are all expressed in the same words, and each of them bears date on the day when the note to which it refers became due ; nor can we doubt that, in each case, the note, thus arrived at maturity, was understood by the defendant to be the note dis *342 honored. That he was, in fact, misled, is most improbable that he ought not to have been misled, is quite certain.
The last objection to the plaintiff's recovery, the pendency of a prior suit for the saíne cause of action, in the circuit court of the United States in Michigan, we should not have hesitated to overrule, even had no evidence been given of the discontinuance of the suit. The provisions of the codp have not altered the rule of law that the pending of such a suit in a court of the United States, or of a sister state, is no defence. (Brown v. Jay, 9 John. 221; Walch v. Durkin, 12 John. 99.) Those provisions relate only to the mode of stating the pendency of a prior action, in those cases in which the defence may be legally admitted. The design of the code was to change the rules and forms of pleading, not the rules of law, or evidence ; nor should a construction, by which a change of this character may be effected, ever be given to its provisions, unless, where the language is so explicit, as to admit no other interpretation. The same question arose, and was decided as we now decide it, in the case of Burrows v. Miller (5 How. Pr. R. 51), and the reasoning of the learned judge who made that decision, commands our entire assent.
The judgment of the special term is affirmed with costs.