WILLIAM BREWSTER, APPELLANT, *v.* WILLIAM WAKEFIELD.

Whilst Minnesota was a Territory, the following statute was passed:

Sec. 1. Any rate of interest agreed upon by the parties in contract, specifying the same in writing, shall be legal and valid.

Sec. 2. When no rate of interest is agreed upon or specified in a note or other contract, seven per cent. per annum shall be the legal rate.

Where a party gave two promissory notes, in one of which he promised to pay, twelve months after the date thereof, a sum of money, with interest thereon at the rate of twenty per cent. per annum from the date thereof, and in another promised to pay another sum, six months after date, with interest at the rate of two per cent. per month, the mode of computing interest under the statute was to calculate the interest stipulated for up to the time when the notes became due, and after that time at the rate of seven per cent. per annum.

Although the laws of the Territory abolished the distinction between cases at law and cases in equity, and required all cases to be removed from an inferior to a higher court by writ of error, and not by appeal, yet such laws cannot regulate the process of this court; and the present case, being in the nature of a bill in equity, is properly brought up by appeal.

The parties who acquired liens on the mortgaged property subsequent to the mortgage in question were not necessarily parties to this appeal; and if they had appeared to the suit in the court below, one defendant, whose interest is separate from that of the other defendants, may appeal without them.

THIS was an appeal from the Supreme Court of the Territory of Minnesota.

The facts of the case are fully stated in the opinion of the court.

It was argued for the appellant by *Mr. Stevens*, upon a brief filed by *Mr. Brisbin* and himself, and for the appellee by *Mr. Bradley*.

*Mr. Stevens* made the following points:

1. It is submitted that the court below erred in allowing to the plaintiff interest at the rate specified in the notes, after their maturity. That the legal and correct mode of estimating the amount due the plaintiff was to estimate the interest at the rates specified in the notes, respectively, up to the time of their maturity, (July 14th, 1855,) and from that time to the date of the decree at the rate of seven per cent. per annum.

Our statutes (vide Rev. Stat. of Minnesota, p. 155, chap. 35) fix the legal rate of interest at seven per cent. per annum, in all cases where no other rate is agreed upon by the parties, in writing.

The appellant agreed in writing to pay a certain sum, at a certain time, with interest thereon at a certain rate (or a certain other sum at interest) at the same time. His contract to pay interest did not extend beyond the time at which he agreed to pay it; the plaintiff, therefore, although entitled to interest upon his demand until the same is satisfied, is not so entitled by virtue of the defendant's contract to pay it, but by virtue of the law which allows interest upon all liquidated demands from the time they become due until they are paid.

Suppose the defendant, Brewster, had, at the maturity of the notes, paid the amount of interest then due, and taken the receipt of the plaintiff in full of such interest, would not his contract to pay interest have been thereby fully performed and discharged, and could the plaintiff have recovered interest thereafter upon the principal remaining unpaid at any greater rate than that fixed by law, upon all liquidated demands where the rate is not agreed upon by the parties?

The rate of interest specified in the notes, it is submitted, is qualified and limited by the time therein specified for its payment, and there being no express agreement to pay interest after the maturity of the notes, it can be recovered from that time only as damages for the non-payment of principal when due. This is the true and only construction of the notes in this case; they contain upon their face no agreement, except to pay a certain sum with certain interest at a certain time. If the parties intended, that in default of payment of the notes at maturity, the same rate of interest should continue until paid, they should have expressed that intention by the use of appropriate words, such as "and at that rate till paid;" or if the notes as drawn do not express the actual agreement which was made between the parties at the time the notes were given, the plaintiff should apply to a court of equity to reform them, and make them correspond with such agreement.

   Bander *v.* Bander, 7 Barb. S. C. Rep., 560, and cases
      there cited.

   2. Authorities directly in point upon the question raised in this case are not numerous.

   In Macomber *v.* Dunham, (8 Wend., 550,) it was held that a loan company, which was authorized by its charter to charge interest for a full month where the loan was for a period over fifteen days and less than one month, was not entitled, where a loan made for twenty days remained unpaid, to demand interest at the same rate for any subsequent time. The loan had remained unpaid for several months after it was due, and it was contended, on the part of the company, that an implied agreement was to be presumed that the interest was to be charged according to the terms upon which the loan was originally made, but the court say (page 553:) "The true and only rational interpretation of this transaction is, that the loan which was made in December, in pursuance of the charter, not being renewed when it became due, the interest upon the debt then due, like the interest upon every other debt which has fallen due, is to be regulated by the general law of the State on that subject," that is, seven per cent. per annum. This case establishes the principle, that where the rate of interest re-

served by the contract is higher than the rate fixed by the statute, such higher rate continues only until the debt becomes due by the terms of the contract, and that after that the interest is recoverable only at the statute rate. This is precisely the principle contended for by the appellant.

In U. S. Bank *v.* Chapin, (9 Wend., 471,) it is held that a bank, which by law is limited to six per cent. interest upon all discounts, is entitled to recover at the rate of seven per cent. from the time the debt becomes due; that the clause in the charter limiting the rate of interest to six per cent. referred only to discounts in the ordinary course of business, and that the contract with the bank having been broken, the defendant was liable to pay the rate of interest fixed by the *lex loci* from the time the debt became due. In this case, the same principle was applied. By it, the lower rate (six per cent.) fixed by the law of the contract was increased to the statute rate, (seven per cent.,) after the debt became due. It operates both ways, simply because it is a principle.

The case of Ludwick *v.* Huntsinger, (5 Watts and Serg., 51, 60,) it seems to us, is directly in point. In that case it was held that "a note payable at a future day with three per cent. interest from the date, carries that interest till the day of payment, and after that, carries lawful interest."

This case is cited in a note to Chitty on Bills, (11 Am., from 9th Lond. ed.,) 682, marginal paging.

There are several cases in the Reports of the State of Alabama.

The first is the case of Clay *v.* Drake, (Minor, 164,) in which it is held, that where the rate of interest is not expressed in a contract, only the statute rate can be recovered in an action on such contract.

Another is the case of Henry *v.* Thompson, (Minor, 209,) and is as follows: "In Alabama, a contract to pay interest at a rate exceeding eight per cent. per annum (the statute rate) must be in writing, signed by the party to be charged, and express that it is for the loan of money, &c.; and such interest is recoverable only for the stipulated time of forbearance."

See, also, Kitchen *v.* Branch Bank of Mobile, 14 Alabama Rep., 233.

It is submitted that, upon principles of justice and of public policy, such extravagant and ruinous rates of interest as those specified in the notes in question should not be encouraged, but that on the contrary they should be discountenanced by the courts. Such contracts ought to receive a strict, rigid, and literal construction. If "so nominated in the bond," give "the pound of flesh," but "no jot of blood."

"The policy of all usury laws in modern times is to protect necessity against avarice, and to fix such a rate of interest as will enable industry to employ with advantage a borrowed capital, and thereby to promote labor and national wealth." Per Ch. J. Best, in the House of Lords, (3 Bing., 193;) and his Lordship might have added, with equal truth, that the policy of these laws is to check the spirit of wild and extravagant speculations.

*Mr. Bradley.* Two preliminary questions arise on the face of this record:

1. Can the case be brought to this court by appeal?

2. Can Brewster alone take the appeal, and without making the other defendants parties?

As to the first: The case is somewhat anomalous. The proceeding certainly is not in a court of equity, or of admiralty and maritime jurisdiction, but a court of law created by statute which has abolished the distinction of law and equity. It is a final judgment in a civil action other than in a case of equity, or of admiralty and maritime jurisdiction, and as such is by statute the subject of a writ of error.

Act 24 Sept., 1789, sec. 22, 1 Stat., 83.

3 March, 1803, sec. 2, 2 Stat., 244.

Courts of equity are distinct in their forms and modes of proceeding, as well as their jurisdiction, from courts of common law, and they are peculiarly placed under the direct control of this court; with this limitation, they are understood to be governed by the principal usages and rules of the English courts of chancery at the time of the Revolution.

See 1 Stat., 276.

4 Stat., 278.

*Brewster* v. *Wakefield.*

5 Stat., 499.

Vattier *r.* Hinde, 7 Pet., 274.

Their jurisdiction, rules of decision, and remedies, are the same in all the States.

Boyle *v.* Zacharie, 6 Pet., 658.

Neves *v.* Scott, 13 How., 268.

From any other court except a court of equity or admiralty jurisdiction, a case can be brought to this court by writ of error only.

The San Pedro, 2 Wheat., 132.

McCollum *v.* Eager, 2 How., 61.

Parish *v.* Ellis, 16 Pet., 451.

As to the second question : It is a case in which there are several defendants claiming in the same right immediately or derivatively, against whom the same joint decree has passed, finally settling their rights, and the appeal is prayed by one only.

An appeal will not lie in such a case by one only.

Owings and others *v.* Kincannon, 7 Peters, 399.

Todd and others *v.* Daniel, 16 Peters, 521.

It is submitted the case ought to be dismissed.

If the case is properly before this court, the points following will be relied on by the defendant in error upon its merits:

I. The rate of interest having been agreed on by the parties, and reduced to writing, the contract is authorized by the statute.

Rev. Stat. Min., p. 155, ch. 35.

II. The contract being in writing, it is the province of the court to interpret and carry it into effect according to the intention of the parties.

Story on Con., p. 556, sec. 633, 634.

7 Barb. S. C., 560.

Chitty on Con., 74, (7 Am. ed.)

III. If the terms are ambiguous, or the intention is doubtful, they are to be taken most strongly against the promissor.

The maxim, "*verba chartarum fortius accipiuntur contra proferentem,*" (Co. Litt., 36 a,) is as applicable to contracts not under seal as to those of greater solemnity.

Mayer *v.* Isaacs, 6 Mees. and Wels., **612.**
Hargrave *v.* Smee, 6 Bing., 248.
Stephens *v.* Pell, 2 Cr. and M., 710.
Edis *v.* Bury, 6 B. and C., 433.

IV. Interest is a compensation for the use or detention of money, and is regulated by contract, express or implied, or given by law. The latter should more fitly be called damages. They rest on different principles, the one arising from the assent of the parties, the other from a duty created by law. This is an express contract for the use of the money. The terms import a continuance of the same rate for its detention.

1. It uses the words "interest;" "interest from date."

These words have a definite signification. They show that it was made with reference to an understood compensation, the right to which would continue until the payment of the principal sum, with all the accumulated interest, or until judgment recovered, when the statutory interest would begin and run on the gross sum of principal and interest to that date; for if an amount equal to the principal debt should be paid, that would be applied first to the payment of the interest, and the residue would still bear interest. Nor could the promissor have paid the debts, or either of them, before the appointed time, so as to stop the interest; for the time is a part of the contract, and of the consideration on which the money was lent, and was made so for the benefit of the creditor

Ellis *v.* Craig, 7 Johns. Ch., 7.

2. The interest is to run from the date of the notes in the one case at the rate of twenty per cent. per annum; in the other, at the rate of two per cent. per month. Language could with difficulty be found more clearly to import that the parties contemplated the possibility of the non-payment of the debts at their maturity, and intended in that event to fix the rate of interest to be allowed and paid for its detention. They do not say the debt is to be paid at the expiration of twelve months, with twenty per cent. in the one case, and twenty-four in the other, added. But the notes are to bear interest from their date, at certain fixed rates. Without such agreement, the rate of interest would have been seven per cent. That

would have run either from the time the debt became due, or such other time as the parties specified in writing. When, then, they in terms say the interest shall be at certain rates agreed upon by them in writing, they can intend neither more nor less than that rate shall take the place of the statutory rate, with all its incidents. It is but substituting, in the terms allowed by the statute, the conventional interest agreed upon by themselves.

V. It is to be construed as every other contract, to make compensation for the use of another man's property. The hire of labor, the rent of a house or machinery, stand on the same principle. If there is no contract, the owner is entitled to recover whatever the jury may find he should reasonably receive. But if there is a contract for a definite period, at a certain rate, and the relation of the parties continues unchanged, the rate of compensation likewise continues. So here the hire of this money and the rate of compensation being fixed by agreement, the rate must continue so long as the money is detained in the use or employment of the borrower. The statute does not come to the relief of the party who has made his own law.

It is therefore submitted that there is no error in the decree of the court below.

Mr. Chief Justice TANEY delivered the opinion of the court.

This case comes before the court upon appeal from the judgment of the Supreme Court of the Territory of Minnesota, before its admission into the Union as a State.

It appears that a suit was instituted in the District Court, in the county of Ramsey, by Wakefield, the appellee, against the appellant and others, in order to foreclose a mortgage made by the said Brewster and his wife, of certain lands, to secure the payment of three promissory notes mentioned in the proceedings. The notes are not set out in full in the transcript, but are stated by the complainant in his petition, or bill of complaint, to have been all given by Brewster on the 11th of July, 1854, whereby, in one of them, he promised to pay, twelve months after the date thereof, to the order of

*Brewster v. Wakefield.*

Wakefield, the appellee, the sum of five thousand five hundred and eighty-three dollars and twenty-five cents, with interest thereon at the rate of twenty per cent. per annum from the date thereof, for value received; and in another, promised to pay to the order of the said Wakefield the further sum of two thousand dollars, twelve months after the date thereof, with interest thereon at the rate of two per cent. per month from the date; and by a third one, promised to pay to the order of the said Wakefield, six months after date, the further sum of one thousand dollars, with interest at the rate of two per cent. per month. This last-mentioned note is admitted to have been paid, and these proceedings were instituted to recover the principal and interest due on the two first.

No defence appears to have been made by the appellant, and the notes were admitted to be due. But when the court was about to pass its decree for the sale of the mortgaged premises, and ascertain and determine the sum due, the appellant, by his counsel, appeared and objected to the allowance of more than the legal rate of interest (seven per cent.) after the notes became due and payable. Wakefield, on the contrary, claimed that interest should be allowed at the rate mentioned in the notes, up to the time of the judgment or decree for the sale. And of this opinion was the court, and by its decree, dated June 20th, 1855, adjudged that the sum of $10,670.77 was then due and owing for principal and interest on the said two notes, and ordered the mortgaged premises, or so much thereof as might be necessary, to be sold to raise that sum.

This decree or judgment was carried by writ of error, according to the practice in the Territory, before the Supreme Territorial Court; and was there, on the 29th of January, 1857, affirmed, with ten per cent. damages, and also legal interest on the sum awarded by the District Court, amounting altogether to the sum of twelve thousand five hundred and thirty-eight dollars and nine cents. For the payment of that amount, with costs, the mortgaged premises were ordered to be sold.

From this last-mentioned decision an appeal was taken to this court.

*Brewster* v. *Wakefield.*

There is no question as to the validity of the notes or mortgage; and it is admitted that no part of the debt has been paid. The question in controversy between the parties is, whether, after the day specified for the payment of the notes, the interest is to be calculated at the rates therein mentioned, or according to the rate established by law, when there is no written contract on the subject between the parties. The question depends upon the construction of a statute of the Territory, which is in the following words:

"Sec. 1. Any rate of interest agreed upon by the parties in contract, specifying the same in writing, shall be legal and valid.

"Sec. 2. When no rate of interest is agreed upon or specified in a note or other contract, seven per cent. per annum shall be the legal rate."

Now, the notes which formed the written contracts between the parties, as we have already said, are not set out in full in the record. We must take them, therefore, as they are described by the complainant, as his description is not disputed by the appellant; and, according to that statement, the written stipulation as to interest, is interest from the date to the day specified for the payment. There is no stipulation in relation to interest, after the notes become due, in case the debtor should fail to pay them; and if the right to interest depended altogether on contract, and was not given by law in a case of this kind, the appellee would be entitled to no interest whatever after the day of payment.

The contract being entirely silent as to interest, if the notes should not be punctually paid, the creditor is entitled to interest after that time by operation of law, and not by any provision in the contract. And, in this view of the subject, we think the Territorial courts committed an error in allowing, after the notes fell due, a higher rate of interest than that established by law, where there was no contract to regulate it. The cases of Macomber *v.* Dunham, 8 Wend., 550; United States Bank *v.* Chapin, 9 Wend., 471; and Ludwick *v.* Huntsinger, 5 Watts and Serg., 51, 60, were decided upon this principle, and, in the opinion of this court, correctly decided.

Nor is there anything in the character of this contract that should induce the court, by supposed intendment of the parties or doubtful inferences, to extend the stipulation for interest beyond the time specified in the written contract. The law of Minnesota has fixed seven per cent. per annum as a reasonable and fair compensation for the use of money: and where a party desires to exact, from the necessities of a borrower, more than three times as much as the Legislature deems reasonable and just, he must take care that the contract is so written, in plain and unambiguous terms; for, with such a claim, he must stand upon his bond.

A question has been raised by the appellee, as to the jurisdiction of this court. The laws of the Territory have abolished the distinction between cases at law and cases in equity, and both are blended in the same proceeding, without any regard to the forms and rules of proceeding, either at law or in equity, and a case cannot be removed from an inferior to an appellate Territorial court, except by writ of error. And it is urged that this case, under the laws of Minnesota, ought to be regarded as a case at law, and removable to this court by writ of error only, and not by appeal.

But the case presented by the record is not a case at law, according to the meaning of those words, in courts which recognise the distinction between law and equity. On the contrary, it is a proceeding in the nature of a bill in equity to foreclose a mortgage, in which the facts as well as the law are to be decided by the court; and an appeal, and not a writ of error, was the appropriate mode of bringing the case before this court. The laws or practice of the Territory cannot regulate the process by which this court exercises its appellate power. Nor, indeed, can there be any such thing as a suit at law, as contradistinguished from a suit in equity, in the courts of the Territory, where legal rights and equitable rights must be blended together and prosecuted in the same suit, without any regard to the rules and practice of courts of common law or courts of equity.

Nor was it necessary that the parties who acquired liens on the mortgaged premises subsequent to the mortgage in ques-

tion should join in the appeal. They were not necessary parties in a proceeding in equity to foreclose the mortgage, and none of them have appeared to the suit to contest the claim of Wakefield. And if it had been otherwise, yet the question in controversy here is the amount of the debt due from the appellant; and in the case of Forgay *v.* Conrad, 6 How., 201, this court decided that a defendant in equity, whose interest is separate from that of the other defendants, may appeal without them.

We have no doubt of the jurisdiction of the court upon this appeal; and the judgment and decree of the Supreme Court of the Territory must be reversed, for the error above mentioned.