Sheed, J.,
delivered the opinion of the Court.
This aetion was brought in the Common Law and! Chancery Court of the City of Memphis, on the 14th of January, 1861, upon a note executed by A. Street & Co. to J. C. Dougherty, in words and figures as-follows:
“ $4716.64. Holly Springs, Miss., Aug. 18th, 1859.
On the first day of January, 1861, I promise to pay to the order of J. C. Dougherty, four thousand' seven hundred and sixteen dollars and sixty-four cents, at the Bank of Memphis, at Memphis, Tennessee, for- *764 •value received, with ten per eent. interest from the .first day of March next. "Witness my hand and seal.
A. Street Co.”
The note was given for a crop of cotton raised by Alexander on his plantation near Holly Springs, Mississippi, — where he resided, and in which State the payee also lived, — which was sold by Alexander to Street & Co.; the latter residing in Memphis. The note was endorsed in blank by the payee, Dougherty, by A. J. Montgomery, N. B. Forrest, and John Overton; the latter indicating his post office, Nashville, "Tenn., under his endorsement. Upon the trial the verdict and judgment were for Bolton, the holder, against the makers and each of the endorsers: except Forrest, who was released upon the plea of a discharge in bankruptcy, and Montgomery, who, during the progress of the cause, had already suffered judgment, to the end that the objection to his competency, as a witness, might thereby be avoided. The judgment was rendered on the 18th of December, 1868, and for the sum of $8,866.34: the interest at the rate of ten per cent, per annum having been computed from the first day of March, 1860, up to the day of the judgment. The defendant, John Overton, alone has appealed in error.
It may be proper to remark that this same case was before this Court -in 1866, upon the question of the validity of the contract on its face: the plaintiff, Bolton, having been repelled from the Court below upon the ground that the note being usurious and void on its face, under the laws of Tennessee, the *765 contract could not be enforced in the Courts of this-State. This Court reversed the action of the Court below and remanded the case for trial; the Court being of opinion that a contract valid either in the State in which it was made or in that where it is to be performed, may be enforced in the Courts of either, and was not void or usurious upon its face; that ten per cent, interest, being a lawful, rate of interest in Mississippi in August, 1859, — the fact that the contract was to be performed in this State, .where the only lawful rate at the time was six per cent., did not render the paper usurious on its face, — if the transaction was bona fide and not a mere disguise to evade the uswry laws of this State. And this proposition is not now controverted at the bar, but is conceded to be sound, as held by this Court in that and other cases. 3 Head, 249. The declaration was, that the contract was a Mississippi contract, and the defendant’s plea denies it, and asserts that the note was made and endorsed at Memphis, Tennessee. There was demurrer to this plea, upon which it seems the action of the Court was not invoked; and the issues presented were upon this plea, and that of nil debit, and' payment. The first plea referred to, tendered a direct issue upon the averment of the declaration, and a replication was unnecessary. The Code rejects them as-idle forms, but retains the principle that the affirmation of a fact by the one, and a negation of it by the other, is an issue. And it was long ago held, that any pleading, tendering an issue, forms one without a ‘similiter: and that the want of a similiter is cured by *766 verdict. 9 Yerg., 20. But these questions of practice and pleading are not seriously insisted upon here.
The paramount questions in the case are, first: As to the computation of interest upon the note:— and second, As to whether, so far as Overton is concerned as endorser, this contract was not made in this State and to be governed by its laws? We will consider these questions in the inverse order of their presentation in argument, as well as of their importance and gravity. It will be borne in mind, that the note is dated on the 18th of August, 1859: that it is due the 1st of January, 1861: that the words, with ten per cent, interest from the first day of March next,” are added: and that these words express the entire contract in regard to interest. The rate of ten per cent, in Mississippi is a conventional rate, the subject of contract between the parties, and not the uniform rate of interest fixed by the laws of that State. The rate in question, therefore, must be claimed by contract and not by operation of law. It will be observed, that at Common Law no debt bore interest, either as its incident, or as an independent obligation, or by way of damages, for its non-payment. 2 Pars. Bills and Notes, 391. It seems that among a large class of people in England, prior to the middle of the sixteenth century, nothing was so little thought of as the accumulation of wealth and the making of money. It resulted that the borrowers of money were many, and the lenders few, and loans of money were at most extortionate rates. The rate of loans in those early times being forty per cent, and more, the business of *767 lending money at any rate for tbe forbearance, fell under tbe public ban, and also under tbe anathema of tbe Judges at Common Law. Thus we are-told: “ It seemetb formerly to bave been tbe general opinion that no action could be maintained on any promise to pay any kind of use for tbe forbearance of money, because that all such contracts were thought to be unlawful, and consequently void." Hawkins Pl. Cr., ch. 82, sec. 6. Tbe first Interest Law in England of which we .find any account, was in 1546, where it was fixed at ten per cent., and the preamble of this Statute treats the interest of money as illegal and criminal. Very different views upon this subject have, however, since obtained: and, perhaps, sounder principles of public economy. Under the Statutes as they existed a few' years ago, money was left, like every other commodity of barter and exchange, to take care of itself in the market. 17 & 18 Vic., ch. 90.
The States of this Union have generally fixed by Statute a uniform rate of interest upon such contracts as by local laws bear interest: — and, some of them have, in addition, left the matter to the contracting parties to agree upon a stated rate of interest greater than the uniform rate: the uniform rate accruing by operation of law, and the conventional rate by virtue of the oontraet. When parties, therefore, have contracted lawfully for a greater rate of interest than the uniform rate, the amount of their recovery must be determined by the stipulations of the contract itself. The general Statute upon the subject in this State is in the following words: “ The time from which interest may *768 be computed shall be the day when the debt is payable, unless another day be fixed in the contract itself.” Code, 1946. And no greater rate of interest than six per cent, shall be received on any contract or obligation, unless agreed on by the parties and reduced to writing in the face of the contract or obligation, according to the provisions of the first Section of said Act, which provides for a conventional rate of ten per cent. Code, 1943-1944, etc. The rate of interest agreed upon in this contract is the lawful conventional rule of the State where the contract purports to have been made, and a larger rate than the uniform rate of that State. In all cases then, the higher rate is the subject of contract. As a matter of law, the right to simple interest does not accrue until the debt is payable, unless otherwise stipulated. The theory of the defendant’s argument is, that as the lawful interest, in the absence of a contract, accrues from the maturity of the obligation — the conventional interest in the case is only contracted for from the first of March, 1860, to the first of January, 1861 — and that it w.as error to compute conventional interest beyond that date, in the absence of any stipulation, that the higher rate should continue to accrue until the debt is paid. While we must dissent from this theory — yet, the reasons are . plausible upon which the doctrine rests. The question came before the Supreme Court of the United States in the case of Brewster v. Wakefield, 22 How., 118, and was. settled in accordance with the defendant’s theory. It was upon a Minnesota contract entered into while that State was a Territory and *769 under a Territorial law, which provided that any rate of interest agreed upon by the parties in the - contract, specifying the same in writing, shall be legal and binding. The doctrine of that case is, that where a party gave two promissory notes, in one of which he promised to pay, twelve months after the date thereof, a sum of money, with interest thereon at the rate of twenty per eent. per annum, from the date thereof; and, in another, promised to pay another sum six months after date, with interest at the rate of two per cent, per month: that the mode of computing interest, under the Statute, was to calculate the interest stipulated for up to the time the note became due; and, after that time, at the rate of seven per cent, per annum, which was the uniform rate. The argument was, that the appellant in that case agreed in writing to pay a certain sum at a certain time, with interest at a certain rate at the same time. His contract to pay interest did not extend beyond the time at which he agreed to pay it; the plaintiff, therefore, although entitled to interest upon his demand until the same is satisfied, is not so entitled by virtue of the defendant’s contract to pay it; but, by virtue of the law, which allows interest upon all liquidated, demands from the time they become due until they are paid. Suppose, it was argued, that the defendant, Brewster,, had at the maturity of the note, paid the amount of interest then due and taken the receipt of the plaintiff in full of such interest, would not his contract to pay interest have been thereby fully performed and discharged, and could the plaintiff have recovered in *770 terest thereafter upon the principal remaining unpaid, at any greater rate than that fixed by law upon all liquidated demands, where the rate is not agreed upon by the parties? If the parties intended that in default of payment at maturity the same rate should continue, they should have expressed that intention by the use of appropriate words, such as, “ and at that rate until paid.” Several cases are cited in support of this argument, and amongst them Bander v. Bander, 7 Barb. S. C. Rep., 560; McComber v. Dunham, 8 Wend., 550; United States v. Chapin, 9 Wend., 471; Ludwick v. Huntsinger, 5 Watts & Serg., 51; Clay v. Drake, Minor, 164; Henry v. Thompson, Minor, 209; Kitchen v. Branch Bank Mobile, 14 Ala., 233. The case of McComber v. Dunham, establishes the principle, that where the rate of interest reserved by the contract is higher than the rate fixed by the general Statute, such higher rate continues only until the debt becomes due by the terms of the contract; and, that after that, the interest is recoverable only at the Statute rate. The Court, in the case of Ludwiak v. Huntsinger, hold, that a note payable at a future day, with three per cent, interest from date, carries that interest till .the day of payment; and, after that, carries lawful interest. The ease of Henry v. Thompson holds, that a contract to pay interest at a rate exceeding eight per cent., the stated rate, must be in writing, signed by the party to be charged, and express that it is for the loan of money: and, that such interest is recoverable only for the stipulated time of forbearance. Under these authorities, Taney, Ch. J., delivering the *771 opinion of the Court, held, that the contract in question carried the conventional rate of interest up to the date of its maturity: but, carried interest at the uniform rate of seven per cent, thereafter. This authority has been followed by other respectable Courts: and, among others, by the tribunal which sat a few years ago at Nashville, known as the “ Court of Arbitration.” In a case which came before that tribunal it was ruled, that where there is a uniform rate of interest, and a conventional rate, — fixed by Statute, — a contract in writing to pay a debt, with a simple stipulation that it shall bear the conventional rate of interest from a designated .date, as in this case, carries the conventional rate only to the time of the maturity; and, that after maturity, only simple interest accrued. On the other hand, there are many respectable authorities holding the opposite view: and, it seems to the Court, upon much stronger aud better reasons: — and reasons, too, which approximate more nearly and more naturally the obvious intention of the parties contracting. It would be difficult to conclude,' in the absence of any arbitrary canon of technical construction, that where a party promised to pay another a sum of money one year after date, with interest at the rate of ten per cent., he did not intend that his obligation should carry that rate of interest as well after, as before, maturity. In the case of Pridgen v. Andrews, 7 Texas, 461, it was held that a note stipulating for conventional interest from date, .bears that rate until payment or until judgment at least. In the case of Thompson v. Pickel, 20 Iowa, 490, the note in con *772 troversy was payable six months after date, with, interest from date at the rate of ten per cent. per annum; and it was held that it drew interest at the rate named after maturity úntil paid. And to the same effect is Hand v. Armstrong, 18 Iowa, 324. In Hopkins v. Crittenden, 10 Texas, 189, it was held broadly that conventional interest does not give place to legal interest at the maturity of the contract, but continues to run until payment. In Kohler v. Smith, 2 Calif., 597, it is held that moneys after they become due bear interest at the rate agreed upon in the written contract: although nothing be said about interest after maturity. We might multiply indefinitely the-utterances, of many other highly respectable Courts to-the same effect; but will content ourselves with mere citations of the dases. Cox v. Smith, 1 Nev., 171; McCan v. Andrews, 2 Nev., 199; Finlay v. Hall, 12 Ohio, 615; Spencer v. Mayfield, 16 Wisc., 178; Morgan v. Jones, 20 Eng. L. & E., 454; Adams v. Way, 33 Conn., 431; Pruyne v. Milwauke, 18 Wisc., 568; Etmyre v. McDaniel, 28 Ill., 210; 29 Conn., 268; 5 Blackf., 22; We hold, that there is no error in the judgment of the Court below in computing interest upon the note in controversy at ten per cent. per annum from the first of March, 1860, until the date of the judgment.
It is argued on behalf of the defendant, Overton, that this is, as a matter of law and fact, a Tennessee contract as to him, and the doctrine of “delivery” is. ingeniously invoked in support of this position. It is said that the contract was in fien and incomplete *773 until Overton, endorsed the note, and that the note was actually delivered in Tennessee, and hence it became a Tennessee contract. This argument is prepared with great ability, and the question is not without difficulty. It is certainly true that, “ the -lex loci contractus depends not upon the place where the note or bill is made, drawn, or dated, but upon the place where it is delivered from drawer to drawee, from promisor to payee, from endorser to endorsee.” 2 Pars. B. & N., 327. Now the illustrations of this 'rule as given, present no case precisely analogous to this. Thus a New York merchant in Boston buys and receives goods and gives his note for them; this is a Boston note, unless it specifies another place of payment. So a note drawn and dated at Baltimore, but delivered in New York for goods purchased, is a New York note. Cook v. Moffat, 5 How., 295. ‘The contract was made in New York and the notes there dated, but delivered in Connecticut. Some of them were payable in New York, and some payable generally. This was a New York contract. DeWolf v. Johnson, 10 Wheat., 367. In Davis v. Coleman, the note was made in North Carolina and delivered in Georgia, for a loan there made. The contract was of Georgia. 7 Ired., 424. A note endorsed for the accommodation of the maker in Detroit and delivered in New York, the endorsement was held governed by the laws of New York. Cook v. Litchfield, 5 Sandf., 330. Now the note in this case is, upon its face, a Mississippi note. And so far as the makers and the payee are concerned, there is no proof which in the *774 slightest degree shakes the presumption of law that the note was made, in the State where it purports to. have been made. We can not notice the affidavits of Street and Ashford, which appear in the record. Mr. Alexander, a planter in Mississippi, sold his crop of' cotton raised on his plantation in that State, to A. Street & Co., of Memphis, Tennessee. As the-case is presented: A. Street & Co. in Mississippi, where it was lawful for Alexander to contract for ten per cent., executed their note to Dougherty, who also resided in Mississippi, for Alexander’s crop of cotton — but were required, as a condition of the trade,, to get the defendant, Overton, to endorse the note;:' and then the contract, already half complete, would be consummated. Now the note is not for money-loaned, but for property, and the intent is part of the-consideration therefor. The note purports to have-been made by Street & Co. in Mississippi, and endorsed by the payee to Alexander, who sold the cotton, himself tó A. Street & Co., upon condition that this note should be endorsed by the defendant, Overton. The note came into the hands of Montgomery, the-agent and factor of Alexander, who procured the endorsement of Overton in Memphis, explaining to him, all that he knew about the note; that it was given, to Alexander, a citizen of Mississippi, for his crop of' cotton raised in that State; that it was endorsed by-Dougherty, another Mississippian; and that the condition of the trade was that he, Overton, was to endorse the note. This Overton did; and Montgomery, as the agent of Alexander, sold the note before due to. *775 the plaintiff — the latter being ignorant of all the facts, except that the note was valid on its face, as advised by his counsel. Now let us enquire what was Overton’s undertaking by the endorsement, under the Law Merchant. His immediate endorsee, Bolton, took the note for value before due, as an innocent holder without notice of any defense. The endorser then warrants, under such circumstances, that' the note is just what it purports to be, a valid contract and executed in a State where .the interest demanded was lawful. In the language of the books, he warrants the existence and legality of the contract he undertakes to assign. It is said, he must take the risk of the validity of the note he assigns. He gives currency to it: and, in fact, warrants its genuineness in respect of the endorser. He warrants the title also, and when prosecuted upon his contract of endorsement he is estopped from denying the existence, legality, or validity of the contract which he has assigned, for the purpose of defeating his own liability. Edw. Bills, 273. The defendant, Overton, then endorses and adopts a contract, which, he sees on its face, is a Mississippi contract, bearing interest at the rate fixed by law in that State: all of which had been explained to him by Montgomery. The contract, thus upon the face of it initiated in Mississippi, is thus consummated in Tennessee: and the note, thus endorsed, is delivered to Alexander’s agent. Under such circumstances we must hold — even if we were to concede that such a defense were available against the plaintiff — that the delivery of the note to the agent of the seller of the cotton was a delivery *776 to 'the seller himself. Freese v. Brownel, 35 N. J., 289. Having given . credit and currency to the paper by his endorsemeiit, the defendant can not be heard as against the plaintiff to set up such a defense. Edw. Bills, 273; 2 Yerg., 350; 4 Hum., 244. Upon default of the parties primarily liable, the defendant’s undertaking is to' dp just what the prior parties had bound themselves to do.
The charge of the Court is criticised at the bar as not precisely applicable to the questions controverted before- the jury. The charge is meagre, but not erroneous : and the defendant has not. brought the Court into error by asking any other instructions, which were refused.
As this case impresses us, the verdict and judgment upon the main issue were right, according to the well . established principles of the Law Merchant. Upon the matter of interest also, we think there was no error; and, the judgment will, in all respects, be affirmed.