JOHN B. BRISCOE, Appellant, v. MICHAEL KINEALY, Respondent.

November 25, 1879.

1. It is not error to refer a case involving the examination of an account embracing over twenty items of mutual debits and credits, arising out of complicated transactions extending over three years of time.

2. Where parties to a settlement ascertain the amount due from one to the other, and the debtor, at the solicitation of the creditor, without any other or valuable consideration, adds thereto the amount of an unjust claim of the latter, for which there is no foundation, and executes a note for the whole amount as between the parties, the note is without legal consideration and void as to the amount thus added.

3. A note expressed to bear interest from date bears the same rate of interest after as before maturity.

APPEAL from the St. Louis Circuit Court.

*Reversed, and judgment.*

N. HOLMES and E. J. WHITE, for the appellant : "A compromise of a disputed liability is binding though it turns out that the party was not liable." — *Cook* v. *Wright*, 1 Best & S. 559 ; *Mullanphy* v. *Reilly*, 8 Mo. 675 ; *s. c.* 10 Mo. 489 ; *Reilly* v. *Crouquette*, 18 Mo. 226 ; *McKinney* v. *Watkins*, 13 Ill. 140 ; *Faust* v. *Birmer*, 30 Mo. 418 ; *Marks* v. *Bank*, 8 Mo. 319. A note bearing interest from date bears the same rate after maturity. — Wag. Stats. 783, sects. 2, 3 ; *Cromwell* v. *County*, 96 U. S. 51 ; *Finley* v. *Acock*, 9 Mo. 841 ; *Payne* v. *Clarke*, 23 Mo. 259 ; *Cordell* v. *Bank*, 64 Mo. 600. Reference. — *Dooley* v. *Barker*, 2 Mo. App. 325.

MICHAEL KINEALY, *pro se:* Non-conclusiveness of the settlement.— 2 Chitty on Con. 964, 966 ; *Warren* v. *Bishop*, 22 Vt. 611 ; *Brown* v. *Tarkington*, 3 Wall. 377 ; *Long* v. *Towl*, 42 Mo. 548. When a note on its face calls for interest from *date*, at a higher rate than that fixed by law, in the absence of a special contract the agreement on the face of the paper is presumed to be intended to last until the maturity of the obligation, after which the contract for interest is presumed to be for the legal rate. — *Eaton* v. *Boissonault*, 5 Reporter (1878), 270 ; *Cook* v. *Fowler*, L. R. 7 H. L. 27 ; *Ludwig* v. *Hutsinger*, 5 Watts & S. 51 ; *Hubbard* v. *Callahan*, 42 Conn. 524 ; *Pierce* v. *Hennessy*, 10 R. I. 223 ; *Robinson* v. *Kinney*, 2 Kan. 184 ; *United States Bank* v. *Chapin*, 9 Wend. 471 ; *Macomber* v. *Dunham*, 8 Wend. 550 ; *Brewster* v. *Wakefield*, 22 How. 118 ; *Burnhasel* v. *Firman*, 22 Wall. 170.

LEWIS, P. J., delivered the opinion of the court.

This is a suit on a promissory note for $511.54. The defendant admits the execution of the instrument, but pleads a total want of consideration. The case was heard by a referee, who found that, as to the sum of $353.85, part

of the note, there was no consideration, and the defendant was not liable thereon. As to the residue, $157.69, the referee's finding was against the defendant. The note was dated February 1, 1868, payable twelve months after date, and expressed to bear "interest from date, at the rate of ten per cent per annum." The referee found that plaintiff was entitled to interest on the amount due, at the rate of ten per cent until the maturity of the note, and to no more than six per cent afterward. Judgment was rendered accordingly, and the plaintiff appealed.

The plaintiff alleges error in the order of reference, assuming that this was not a case to go before a referee without the consent of both parties. The development of the defence required an examination of mutual debits and credits between the parties extending over a period of about three years, and including from twenty to thirty items. The transactions were various : relating to loans and deposits of money, sales of personal property, premiums on gold advances, interest, etc. It is undoubtedly true, that while the order of reference is largely a matter of discretion with the court, there are yet many cases in which there can be no such order, against the consent of either party, without error. In *Dooley* v. *Barker*, 2 Mo. App. 325, it was held erroneous so to refer a case in which the account contained substantially only three items, which were subdivided into a semblance of eight, all of them being on one side. There is no fixed rule by which it can be determined how many items, and of what description, will be necessary to meet the statutory standard of " a long account." We cannot say, in the present instance, considering the complicated nature of some of the mutual transactions, that there was any abuse of authority, or error otherwise, in sending the case to a referee.

It appears from the testimony that Mrs. Winifred Briscoe, who was the mother of the plaintiff and of the defendant's wife, sold two tracts of land in Ralls County, in the

year 1863, for the sum of $750. It was suggested by some one that Mrs. Briscoe's children were possibly entitled to some reversionary interest in one of the tracts. In order to make everything satisfactory with the purchaser, the plaintiff, together with his sister and the defendant, her husband, joined in the conveyance of the land. In 1864, Mrs. Briscoe died, leaving a will, in which, after a small legacy to the plaintiff, she bequeathed the residue of her estate, real and personal, to the wife of defendant. Some time afterwards, the plaintiff claimed that he ought to be paid $250 for his alleged reversionary interest of one-third in the land which his mother had sold in her lifetime, when he had joined in the deed. The defendant had become administrator, with the will annexed, of Mrs. Briscoe's estate. The plaintiff never presented his demand for allowance against the estate; but after the statutory period for allowances had expired, he became persistent in personal demands upon the defendant for payment of his alleged claim. The defendant uniformly repudiated any and all liability or interest whatever in the premises. From this point there are some conflicts in the testimony. The findings of the referee indicate, substantially, the following state of facts : From 1865 to 1868, inclusive, there were numerous transactions between the plaintiff and defendant, with occasional partial adjustments of their accounts, but no complete settlement. Towards the latter part of this term there was no little unkind feeling between them. On February 1, 1868, they met together and cast up all their accounts on both sides, thus reaching, as the result, a balance in the plaintiff's favor of $157.69. The plaintiff at this time was importunate about his claim on account of his mother's land sale, which the defendant, as he testifies, uniformly refused to recognize. According to defendant's account, the plaintiff beset his sister with importunities on this subject, until she entreated the defendant, her husband, for the sake of peace in the family, to satisfy her brother's demand. The defend-

ant yielded to this persuasion, and in giving to plaintiff a note, as agreed upon, for the balance due upon settlement, voluntarily, and without other or valuable consideration of any sort, added therein the sum of $353.85, which represented the $250 claimed by the plaintiff, with interest thereon from the date of the land sale. The referee held, as before stated, that for so much of the note there was no legal consideration, and the obligation was void as against the defendant.

It is urged for the plaintiff, that this claim on account of the land sale was one of the matters included in the account stated between the parties; that the account was the real consideration for the note, and it is not allowable to go behind that which the parties themselves have agreed upon. The defendant makes two answers to this proposition: 1. It appears from the referee's finding that this item was not considered in the account stated of mutual debts and credits; but the balance was first ascertained, and struck at a specific sum, which did not include it; and that afterwards this sum of $353.85 was added, not as an indebtedness agreed upon, but as a mere gratuity, for the sake of peace, and as a relief to the defendant's family. 2. Even if it be considered as a part of the settlement, it appears from the authorities that, inasmuch as there was no shadow of legal demand or obligation affecting the defendant on account of that claim, a settlement including it could not create one. If the claim were doubtful or disputed, and yet having some foundation, however frail, to rest upon, the defendant's consent to its incorporation in the account, and his promise to pay, would be conclusive upon him. But here the defendant was an entire stranger to the plaintiff's demand, if any he had. If it ever existed against the estate of Mrs. Briscoe, the limitation of demands against estates of deceased persons had long since barred it. It was not pretended that the defendant had ever assumed any personal responsibility concerning it. There was literally

nothing to suggest an existing demand against him, any more than against a person yet to be born.

In *Warren* v. *Bishop*, 22 Vt. 607, there had been an account stated between plaintiff and defendant, including some items of indebtedness as to which the defendant had been discharged in bankruptcy. It was held that, as to them, the defendant was not bound by the account stated. Said the court: "It is urged, indeed, that the accounting was conclusive upon the defendant. But that must be understood of the truth of the account and of the balance found, and not of the obligation to pay. Even a promise, unless induced by a new consideration, will not bind a party in a different right from that in which he was already liable, nor to a greater extent." In *Long* v. *Towl*, 42 Mo. 545, the defendant had given to the plaintiff an obligation in writing for the performance of certain undertakings, the consideration whereof was that the plaintiff should dismiss certain suits then pending. The Supreme Court found that the suits were wholly unjust, and based upon no legal demand whatever, and therefore held that the defendant was not bound by the obligation sued on, for want of consideration. The court said : "To make the settlement of assumed rights a sufficient consideration for a promise, there must be at least an appearance of right sufficient to raise a possible doubt in favor of the party asserting the claim."

In *Drue* v. *Thorne*, Alleyn, 72, the doctrine was applied to an accounting with the plaintiff by a husband and wife concerning indebtedness of the wife before her marriage. It was held that the husband was not chargeable upon his promise in consideration of the account stated, because it was not for his own debt. It seems that there might have been a recovery in another form of action; but for the promise made by the husband upon an account stated, there could be no recovery without a new consideration, as of forbearance, etc. In *Brown* v. *Tarkington*, 3 Wall. 377, the original indebtedness arose upon an illegal transaction. It

was claimed that a settlement of accounts between the parties, and the giving of a note for the balance found, created a new obligation, which was purged of the elements of illegality in the original transaction. The United States Supreme Court denied this, and held that payment of the note could not be enforced.

An application to the present case of the principles upon which these decisions were founded would seem to indicate that, even if the land claim was included in the accounting between the parties, the defendant would be permitted to show that, as against him, it was absolutely a nullity, and therefore not capable of supporting a promise to pay. But it is not really necessary here for the defendant to stand upon this proposition. The defendant's testimony tended to prove, and the referee found, that the accounting in fact ended with the ascertaining of the balance of $157.69 in the plaintiff's favor, and that the other amount was incorporated in the note upon totally different considerations; not as an acknowledged indebtedness of the defendant, and having no reference to the settlement of debits and credits between the parties. The finding of the referee is conclusive, and justifies the exclusion of the alleged claim from the amount of the plaintiff's recovery.

It is urged that the referee's ruling on the subject of interest was erroneous. The defendant refers us to a number of decisions which sustain the views of the referee. In these it is generally held that where the law has fixed a rate of interest for contracts in which no rate is agreed upon, and permits a higher rate to be adopted by agreement, if a note is expressed to bear the agreed rate from date until maturity, the agreed rate will cease at that point, and the legal rate, without agreement, will then begin to run. It is argued that the contract terminates with the maturity of the note, and the law then takes hold of the subject-matter, and prescribes the percentage per annum which the promisor must pay, whether in damages or as

interest, for his default.  *Ludwick* v. *Huntzinger*, 5 Watts
& S. 51; *Hubbard* v. *Callahan*, 42 Conn. 524; *Pearce* v.
*Hennessy*, 10 R. I. 223; *United States Bank* v. *Chapin*, 9
Wend. 471; *Macomber* v. *Dunham*, 8 Wend. 550; *Brew-
ster* v. *Wakefield*, 22 How. 118; *Burnhisel* v. *Firman*, 22
Wall. 170.

Later authorities, however, take a different view of the
question.  In *Cromwell* v. *Sac County*, 96 U. S. 51, the
United States Supreme Court found it the settled law
of Iowa, under repeated decisions of her highest court, that
contracts drawing a specified rate of interest before matu-
rity draw the same rate of interest afterwards.  It is added
that a like decision has been made in several of the States,
and cases are cited from Massachusetts, Ohio, Indiana, Illi-
nois, Wisconsin, California, Nevada, and Texas.  These de-
cisions all appear to be under statutes similar to that of
Missouri, which fixes a rate of interest upon contracts
where no rate is agreed upon, but allows a higher rate upon
agreement of the parties.  In *Brannon* v. *Hursell*, 112
Mass. 63, the court said : " The rate of interest specified in
the note is ten per cent, and the plaintiff claims interest at
that rate since the maturity of the note.  We are of opinion
that he is entitled to receive it.  The legal rate of interest
is six per cent, in the absence of any agreement for a differ-
ent rate ; but it is lawful for the parties to contract to pay
and receive a different rate.  * * *  In the case at bar,
the defendants have agreed in writing that the rate of inter-
est for the use of the plaintiff's money shall be ten per
cent.  The plaintiff recovers interest both before and after
the note matures, by virtue of the contract, as an incident
or part of the debt, and is entitled to the rate fixed by the
contract."

This reasoning appears to consist with the logic of con-
tract liability.  To illustrate : A. contracts with B. to fur-
nish entertainment for fifty persons on the fourth day of
July.  If he fail to perform, he cannot discharge himself by

furnishing or tendering the entertainment on the 5th or 10th, or any later day ; nor is he, in truth, under any obligation so to do. The contract, as to performance, has no continuing force after the day agreed upon. But if A. promise to pay B. a sum of money on the fourth day of July, and fail to do so, he may acquit himself by payment of the money, with lawful interest, on any day thereafter. The specific obligation to pay continues in point of time, with a fixed rate of increase as the time progresses. This is because of the special nature of the contract. Say it is the law which keeps alive the oligation to pay. Yet this is only saying that the continuing obligation results from the law's interpretation of the contract. If, then, from the nature of the contract, the obligation to pay the principal remains after the day originally fixed, why should not the rate of interest agreed upon continue in like manner, as a necessary incident of the contract?

The question here presented has never been passed upon by our Supreme Court. We believe, however, that by universal usage in the courts, and among business men throughout the State, the rate of interest agreed upon in a written obligation for the payment of money has always been held to continue until actual payment, unless a different rule was prescribed in positive and clear terms. We find in the weight of authority nothing to justify such an innovation as the defendant here insists upon, but do find the contrary rule to be better supported by the more recent and well-considered adjudications. The Circuit Court therefore erred in denying to the plaintiff the rate of interest specified in the note sued on, as well after maturity as before.

There was some controversy about a premium on gold, which was included in the settlement. This matter was decided adversely to the defendant ; and, as he did not appeal, there is nothing for us to review on that subject.

The judgment will be reversed, and a final judgment for

the plaintiff will be entered here allowing him the balance of principal as found by the referee, with interest from the date of the note sued on, at the rate specified therein. All the judges concur.