Mr. Justice SWAYNE
 

 delivered the opinion of the court; considering the two questions raised in the argument, in the order in which they were raised :
 

 I. The bases of the calculation of interest made by Bnrnhisel and Wright were wrong, and the result was the aggregate amount of the two notes of April 26th, 1872, which was a sum much too large. Burnhisel was then entitled,
 

 1st. To the face of the two original notes to him, with 25 per cent, interest upon each for one year, and the lawful rate of interest of the Territory where no rate is specified down to the date of the settlement; and,
 

 2d. To the face of the note to Pond with the like lawful rate of interest after its maturity down to the same period.
 
 †
 
 The implication of the “ act relative to interest,” of February 14th, 1868, is exactly the same as the affirmation of the act upon the same subject of 1869. The latter act was, therefore, unnecessary.
 
 ‡
 
 Both these acts fix the rate at 10 per cent, where no rate has been agreed upon. What it was in such cases, prior to the taking effect of the first act, we are not advised.
 

 
 *177
 
 For the amount due upon the two original notes to Burnhisel and upon the one to Pond, transferred to Burnhisel, the two later notes, with the rate of interest stipulated in them, and the mortgages securing them, were, aside from the objection arising under the Bankrupt law, unquestionably valid securities.
 
 *
 
 In Pennsylvania, where there is a statute making usury penal, but not declaring the contract void, a usurious bond and mortgage may be enforced for the amount actually due.
 
 †
 

 II. In order to bring a security for a debt within the provision of the Bankrupt law, relied upon by the appellee, it is necessary that all the prescribed conditions should concur.
 

 If either element of the combination be wanting, there is no infringement of the law. Among them, and the cardinal one, is that the security should be given by the bankrupt within the time specified, “ with the view of giving a preference to a creditor or person having a claim against him.” Are the securities here in question liable to this objection? The facts must give the answer, and they are undisputed. The several securities upon which the notes and mortgage attacked were founded, and for which the later ones were substituted, were given not only more than four months, but more than five years, before the filing of the petition in bankruptcy. The later ones were for the same liabilities consolidated, and for nothing else. The mortgage was upon the same property as the prior mortgage, and none other. They were intended to be for the amount due upon the former securities. They were for too much, as we now adjudge the law of Utah to be. In the view of equity they are as if they had been taken for the proper amount. The excess is a nullity. It has no efficacy or validity for any purpose. The bankrupt’s estate, to be administered by his assignee, is just what it would have been if the new notes
 
 *178
 
 and mortgage had never existed. The rights of other creditors were in no wise affected by the substitution. The mortgaged premises, when sold, yielded a sum less than sufficient to pay the amount due on the original securities. It cannot be justly said that any property was withdrawn or any preference given within the four months. The withdrawal and the preference were years before. The new securities were only the recognition and continuity of those which preceded them. The change was one of form rather than of substance. It is as much the purpose of the law to sustain all valid claims arising beyond the time specified as it is to strike down the frauds within that time which it denounces. The assignee took the estate subject to the rights, legal and equitable, of all other parties.
 
 *
 
 Our views in this case are in harmony with those expressed in several recent cases in which we had occasion to consider this section of the Bankrupt law.
 
 †
 
 We hold that the section does not affect securities within the category of those before us.
 

 There is another ground upon which a judgment for the appellant may well be placed. As before remarked, the new securities were intended to take the place of the prior ones. If the new ones are adjudged invalid, the cancellation and surrender of the prior ones will have been without the shadow of a consideration. If the cancellation and surrender are permitted also to stand, Burnhisel will have lost his debt without fault on his part, and contrary to the intent of both debtor and creditor in making the change of securities. Burnhisel will be in no better situation than if he had given up the old securities upon being paid in coin or currency which he believed to be good, but which turned out to be counterfeit. Where there is a failure of consideration and fraud or mistake in such cases, a court of equity will annul the cancellation and revive the securities. Upon being so revived they resume their former efficacy. This is an ordinary exercise of the jurisdiction of such tribunals.
 
 *179
 
 “ It is a rule in equity that an incumbrance shall be kept alive or considered extinguished as shall most advance the justice of the case.”
 
 *
 

 The application of this principle occurs most frequently in cases of usury. It is well settled that if a security founded upon a prior one be fatally tainted with that vice, and the prior one were free from it but given up and cancelled, and the latter one thereafter be adjudged void, the prior one will be revived, and may be enforced as if the latter one had not been given. The cases to this effect are very numerous.
 
 †
 
 A vendor’s lien may be revived under the same circumstances.
 
 ‡
 
 In the same suit, wherein there is a failure to recover upon the void security, the valid one, on account of which it was given, may be euforced. In the case before us all the notes and mortgages are fully set out in the bill. There is, therefore, no obstacle arising from the state of the pleadings.
 

 Embarrassment sometimes occurs in such cases from the attaching of intervening rights. Here there are none, and as regards the assignee there can be none. If the later securities were void, as insisted by the appellee, then the appellant would be entitled to relief in this view of the case.
 

 Decree reversed, and the case remanded, with directions to enter a decree
 

 In conformity with this opinion.
 

 †
 

 Brewster
 
 v.
 
 Wakefield, 22 Howard, 127; Young v. Godbe, 15 Wallace, 562.
 

 ‡
 

 United States
 
 v.
 
 Babbitt, 1 Black, 61.
 

 *
 

 Wearse
 
 v.
 
 Pierce, 24 Pickering, 141; Abbe
 
 v.
 
 Newton and wife, 19 Connecticut,20; Rood w. Winslow, 2 Douglass, Michigan, 68; Mackey
 
 v.
 
 Brownfield, 13 Sergeant & Rawle, 239 ; United States
 
 v.
 
 Bradley, 10 Peters, 343.
 

 †
 

 Wycoff
 
 v.
 
 Longhead, 2 Dallas, 92; Turner v. Calvert, 12 Sergeant & Rawle, 46.
 

 *
 

 Gibson
 
 v.
 
 Warden, 14 Wallace, 244.
 

 †
 

 Wilson
 
 v.
 
 The City Bank, 17 Id. 473; Tiffany
 
 v.
 
 The Boatman’s Savings Institution, 18 Id. 375; Cook
 
 v.
 
 Tullis, Ib. 332.
 

 *
 

 Starr v. Ellis, 6 Johnson’s Chancery, 395; Neville
 
 v.
 
 Demeritt et al., 1 Green’s Chancery, 336; Barnes
 
 v.
 
 Camack, 1 Barbour, Supreme Court, 396; Loomis
 
 v.
 
 Hudson, 18 Iowa, 416; East In. Co.
 
 v.
 
 Donald, 9 Vesey, 284; Hore
 
 v.
 
 Becher, 12 Simons, 465.
 

 †
 

 Parker
 
 v.
 
 Cousins, 2 Grattan, 389; Farmers’ and Mechanics’ Bank
 
 v.
 
 Joslyn, 37 New York, 353; Cook
 
 v.
 
 Barnes, 36 Id. 521; Rice
 
 v.
 
 Welling
 
 &
 
 Fake, 5 Wendell, 595.
 

 ‡
 

 Crippen
 
 v.
 
 Heermance, 9 Paige, 211.