WILLIAM M. DUNCAN *v.* EWING'S HEIRS AND EXECUTORS.

April Term, 1875.

VENDOR AND VENDEE — CONVENTIONAL INTEREST — CONTRACT. — The complainant, having mortgaged certain realty, with power of sale for cash, free from redemption, to secure his note for borrowed money, payable two years after date, with interest at the rate of ten per cent per annum from date, reciting that "said interest" was "evidenced" by four notes, at intervals of six months, with like interest, after the payment of the first of these interest notes, sold the realty to the defendant's testator, in consideration of his assuming and paying the debt evidenced by the mortgage note, then paid the mortgage debt, and filed this bill to sell the land. *Held,* that the vendee only bound himself to pay the principal of the mortgage note, and that the note carried legal interest after maturity. *Held,* also, that the payment of the mortgage debt by the complainant extinguished the mortgage, leaving in him only the vendor's equity which he was entitled to enforce.

*D. F. Wilkin,* for complainant.
*R. Ewing,* for defendants.

THE CHANCELLOR : — Bill to enforce vendor's lien. The complainant had, August 27, 1872, mortgaged the lot in question to William M. Murphy, to secure certain indebtedness, described as follows : "I am indebted to Samuel M. Murphy by my promissory note of this date, due two years after date, bearing ten per cent per annum interest from date, payable semi-annually, as evidenced by my four notes of even date herewith, said original first note being for the sum of six thousand dollars, money to me in hand this day loaned by said Samuel M. Murphy, and said interest notes being each for the sum of three hundred dollars, and due respectively at six, twelve, eighteen, and twenty-four months after date. Now, if I shall pay said interest notes as each and every one of them respectively fall due, and said promissory note for six thousand dollars when it falls due," etc.

The principal note itself is in these words and figures :

"$6,000.            NASHVILLE, August 27, 1872.

"Two years after date I promise to pay Samuel M. Murphy, or order, six thousand dollars, for value received, with ten per cent interest per annum from date ; said interest payable semi-annually, evidenced by four promissory notes, each for three hundred dollars, at six, twelve, eighteen, and twenty-four months, respectively, after date.

"This note is secured by mortgage on my house and lot on Broad Street, in the city of Nashville.

"W. M. DUNCAN."

The interest notes are in the ordinary form, with this addition : "It is agreed that this note shall bear interest at the rate of ten per cent per annum, if not paid at maturity."

On June 3, 1873, complainant sold and conveyed said realty to E. H. Ewing, reciting on the face of the deed the consideration, as follows : "For and in consideration of ($6,000) six thousand dollars to me in hand paid, the receipt of which I do hereby acknowledge, and the further consideration of the assumption and payment by Edwin H. Ewing of a certain debt now owing by me to Samuel Murphy,

and evidenced by my note to the said Murphy for ($6,000) six thousand dollars, the said note bearing date the 27th day of August, 1872, and payable two years after the date thereof, the same constituting a mortgage upon the property conveyed by this instrument."

The question submitted to the court upon these facts is whether Ewing's estate, he having since died, is bound for the payment of the interest notes, as well as the note for $6,000. The complainant has paid the principal debt and interest notes, and filed this bill to enforce his lien as vendor. He does not claim that the purchaser was bound to pay the first interest note which fell due before the purchase, but only the last three notes.

The purchaser agrees to assume and pay "a certain debt" owing to Murphy, and evidenced by note for $6,000. The note itself calls for $6,000, with "ten per cent interest from date," evidenced by four promissory notes, at six, twelve, eighteen, and twenty-four months. These notes were executed separately, with the stipulation that, if not paid at maturity, they should themselves bear interest at the rate of ten per cent per annum. The fact that separate notes were given for the interest was mentioned on the face of the principal note. If the principal note had been assigned to a third person, it would not be pretended that he could recover from the maker more than the principal debt of $6,000. If such were the construction, a *bonâ fide* holder for value, on the day before the maturity of the note, might recover the entire interest for the two years, although in the meantime the maker may have paid up the interest notes as they fell due. It is obvious that the interest notes merged the interest on the loan, and that no more could be recovered on the principal note than the $6,000. The "debt evidenced by the note" was, therefore, only the principal debt, not the interest; and it was this debt which Ewing assumed to pay. The contrary view would make him liable for the interest note which had

already fallen due, and was paid before he purchased the property. The very statement of the fact shows the impossibility of yielding to the complainant's construction of the contract.

Upon the question raised by the cross-bill as to the cloud upon the title, by reason of the trust conveyance by P. L. Nichol to his wife, I find, upon examination, that the wife is expressly authorized by the trust-deed to sell and convey the property conveyed to her. The deed makes it her duty to reinvest the proceeds. Under such an instrument, the purchaser is not bound to see to the application of the purchase-money. *Williams* v. *Otey*, 8 Humph. 563, 568; *Cardwell* v. *Cheatham*, 2 Head, 14, 20; *Loughmiller* v. *Harris*, 2 Heisk. 553; Perry on Tr., sec. 793. I am of opinion, therefore, that the title is good, the trustee and beneficiaries being made defendants, and raising no question touching the *bonâ fides* of the transaction, or the payment of the purchase-money.

The complainant insists that under this bill he is entitled to have the property sold upon the terms stipulated for in the deed to Murphy, for cash, free from the equity of redemption. But in this he is clearly mistaken. Ewing only agreed to pay a " certain debt " secured in that deed, not to subject himself to its terms. The mortgage debt was extinguished by the payment by Duncan, the debtor. *Carter* v. *Taylor*, 3 Head, 30. The complainant is entitled only to enforce such lien as he has reserved on the face of his deed, which does not appear in the record, or to fall back on the vendor's equity. In either event, there being no prayer for a sale on time, free from the equity of redemption, the sale must be for cash, subject to redemption.

Another question raised is whether Ewing's estate is bound to pay interest on the debt assumed at the rate of ten per cent per annum, or only six per cent per annum. The act of 1870, ch. 69, sec. 1 (Rev. Code, 1944a), makes it lawful to contract for any rate of interest not exceeding

ten per cent per annum, " provided that the rate of interest be in writing, and expressed on the face of the instrument creating the debt or obligation." And section 2 of the same act directs that " no greater rate of interest than six per cent per annum shall be received on any contract or obligation, unless agreed on by the parties, and reduced to writing in the face of the contract or obligation, according to the provisions of the first section of this act." The instrument creating the debt or obligation of Ewing is, so far as appears, only the deed of conveyance to him from the complainant, and that only provides for the assumption of the debt of $6,000, saying nothing of the rate of interest. And if we could embody the note itself in the contract, so as to come within the statute, which can scarcely be admissible, we find it only provides for the rate of interest to its maturity. *Cook* v. *Fowler*, L. R. 7 H. L. 27 ; *Brewster* v. *Wakefield*, 22 How. 118 ; *Burnhisel* v. *Firman*, 22 Wall. 170. It is clear that Ewing's estate is only liable for interest at the rate of six per cent.

NOTE.— The conclusion announced in the last paragraph of the foregoing opinion, upon the effect of a general stipulation for interest at a higher rate than the usual legal rate, was in accord with the rulings of the Court of Arbitration at Nashville, a court appointed by the Legislature, of which the chief justice of the state was a member, to dispose of cases in the Supreme Court, submitted to it by consent of parties. The question afterwards came before the Supreme Court at Jackson, and was decided otherwise, the opinion being delivered by Sneed, J., and the authorities carefully reviewed. *Overton* v. *Bolton*, 9 Heisk. 762. The exact point ruled was that a note for money, payable at a future day, with interest from date, at a conventional rate above the legal rate, will bear the rate agreed upon after maturity as well as before. In the present case, the language of the note seems expressly to limit the conventional rate of interest to the period before maturity, by saying, "said interest" * * * "evidenced by," etc.