### MATTHEWS v. WESTPHAL et al.

*(Circuit Court, D. Iowa. May, 1880.)*

1. BANKRUPTCY—PREFERENCE OF CREDITOR—CHATTEL MORTGAGE.
    Rev. St. U. S. § 5128, providing that any conveyance by a debtor in contemplation of insolvency, and with intent to prefer any creditor, shall be void if made within four months before the filing of a petition in bankruptcy, does not apply to a chattel mortgage made with such intent before the four months, but, by agreement, kept from record until within that time.

2. SAME.
    The giving of a chattel mortgage with intent to create a preference is invalid when made within the four months.

In Bankruptcy. On appeal from the decree of the district court.
*J. W. Shields*, for plaintiff.
*Shiras, Van Duzee & Henderson*, for defendants.

McCRARY, J. This is an appeal from the decree of the district court in a proceeding in bankruptcy. The suit was brought by plaintiff, as assignee of one Jorgenson, a bankrupt, to set aside a chattel mortgage executed by the bankrupt to defendants, and to recover the value of the property conveyed thereby, upon the ground that the same was fraudu-

lent, at common law, under the statutes of Iowa, and under the bankrupt act. The court below held as follows: (1) That the chattel mortgage was *bona fide*, and not fraudulent at common law or under the Iowa statutes. (2) That it gave defendants such a preference as is forbidden by the bankrupt act to be given to any creditor within four months from the time of the filing of the petition in bankruptcy. Rev. St. § 5128.[1] (3) That, said preference not having been given within said period of four months, the plaintiff could not recover.

I have no difficulty in affirming these rulings upon the first two propositions. The conclusion upon the third was reached by the learned district judge, as appears from his opinion, not without much hesitation. The doubt grows out of the fact, which appears from the evidence, that the chattel mortgage in question, though executed more than four months prior to the filing of the petition in bankruptcy, was, by agreement between the parties, kept from the record until a later period, and was filed for record within the four months. It appears that this agreement not to record was made to prevent the institution of proceedings in bankruptcy by other creditors of the mortgagor. Under these circumstances, did the four months begin to run from the execution of the chattel mortgage or from the recording of the same? It was held by this court in *Harris* v. *Bank*, 4 Dill. 133, that in a case where a deed of trust was kept off the record to prevent the knowledge thereof from coming to other creditors the four-months limitation did not begin to run until the filing of the instrument for record. This decision would be followed as settling the rule for this court were it not that certain decisions of the supreme court are brought to my notice which seem to establish a different doctrine. This makes it necessary to examine carefully these decisions, since, if the case of *Harris* v. *Bank* cannot be harmonized with them, it must of course yield to them as the superior authority. The cases cited are *Bernhisel* v. *Firman*, 22 Wall. 170; *Sawyer* v. *Turpin*, 91 U. S. 114. And it is insisted that the doctrine of these cases is supported by the case of *Bean* v. *Brookmire*, decided by Mr. Justice MILLER in the circuit court for the eastern district of Missouri. 1 Dill. 24. In *Bernhisel* v. *Firman* this precise question did not arise, but the court laid down the general doctrine that, in order to bring a security for a debt within the provisions of the bankrupt law, it is necessary that all the prescribed conditions should concur. And it was said that among these conditions "the cardinal one is that the security should be given by the bankrupt within the time specified," and with the view

[1] Rev. St. U. S. § 5128: "If any person, being insolvent, or in contemplation of insolvency, within four months before the filing of the petition by or against him, with a view to give a preference to any creditor or person having a claim against him, or who is under any liability for him, procures or suffers any part of his property to be attached, sequestered, or seized on execution, or makes any payment, pledge, assignment, transfer, or conveyance of any part of his property, either directly or indirectly, absolutely or conditionally, the person receiving such payment, pledge, assignment, transfer, or conveyance, or to be benefited thereby, or by such attachment, having reasonable cause to believe such person is insolvent, and that such attachment, payment, pledge, assignment, or conveyance is made in fraud of the provisions of this title, the same shall be void, and the assignee may recover the property, or the value of it, from the person so receiving it, or so to be benefited."

to giving one or more creditors a preference. The court further said: "It is as much the purpose of the law to sustain all valid claims arising beyond the time specified, as it is to strike down the frauds within that time which it denounces." The case chiefly relied upon by appeliee is *Sawyer* v. *Turpin*. The facts in that case were briefly as follows: The petition in bankruptcy was filed October 22, 1869. On the 15th of the preceding May the bankrupts had conveyed to Turpin the property in controversy by an instrument in form a bill of sale, but in substance a mortgage, to secure a large debt. This instrument was not recorded, and it was insisted that it was kept off the record and ·kept secret by agreement between the parties to it. On the 31st of July, 1869, the bankrupt executed a mortgage to the same party on the same property, and to secure the same·debt. It was nothing more than a change in the form of the security, and therefore,·if the first was void, so was the last. The court said, speaking of the original bill of sale:

"Having been executed more than four months before the petition in bankruptcy was filed, there is nothing in the case to show that it was invalid. True, it was not recorded, and it may be doubted whether it was admissible to record; true, no possession was taken under it by the vendee; but for neither of these reasons was it the less operative between the parties. It might not have been a protection against attaching creditors, if there had been any; but there were none. It was in the power of Turpin to put it on record any day, if the recording acts apply to such an instrument, and equally within his power to take possession of the property at any time before other rights against it had accrued. These powers were conferred by the instrument itself, immediately on its execution."

And the court further say:

"It has been argued, however, on behalf of the assignees, that the bill of sale of May 15th was an insufficient consideration for the mortgage, because, as alleged, there was an agreement between Bacheller and Turpin that it should not be recorded, and should be kept secret. If the fact were as alleged, it is not perceived that it would be of any importance, for it is undeniable that the bill of sale rested on a valuable consideration, to-wit, the debt of $27,839 in gold, due to Novelli & Co.; and it is not denied that it gave to Turpin the right to take possession of the property described in it. It was therefore a valuable security, even if there was an agreement not to record it. If it be said failure to put it on record enabled the debtor to maintain a credit which he ought not to have enjoyed, the answer is that the bankrupt act was not intended to prevent false credits. Its purpose is ratable distribution. But the evidence does not justify the assertion that there was in fact any agreement that the bill of sale should not be recorded, or that possession should not be taken under it."

In *Bean* v. *Brookmire*, Mr. Justice MILLER stated the rule by which to construe the fifth section of the bankrupt act as follows:

"The acts mentioned in the section are not such as were forbidden by the common law, or generally by the statutes of the states. Nor are they acts which, in their essential nature, are immoral or dishonest. For a man who is insolvent, or approaching insolvency, to pay a just debt, is not morally wrong, nor was it forbidden by any law in this country previous to the bankrupt act; and, though a preference of creditors, by transfer or assignment of property by an insolvent, may sometimes be unjust to the other creditors, it

was not forbidden by many of the states. It is very certain that such a preference may consist with the highest obligations of morality, and under circumstances which any one can imagine it may be the dictate of the purest justice in reference to all concerned. The careful and diligent framers of the bankrupt act were fully aware of all that has just been said. But they were about to frame a system of laws, one main feature of which was to provide for the distribution of the property of an insolvent debtor among his creditors, and they adopted wisely, as the general and pervading rule of distribution, equality among creditors. But they found that this general principle could not, without hardship, be made of universal application. When a creditor had obtained by fair means a lien on any property of the bankrupt, that lien ought to be respected. If he had so obtained payment of the whole or a part of his debt, the payment ought to stand. These exceptions to the general rule of distribution were, however, liable to be abused, and might be used to defeat the purposes of the bankrupt law. The bankrupt, knowing that he must soon be helpless, would desire to pay or secure favorite creditors. They, knowing his inability to pay, and his liability to be called into a bankrupt court, would naturally desire to secure themselves at the expense of other creditors. In this dilemma, congress said we cannot prescribe any rule by which a preference would be held to be morally right or wrong, and it would be fatal to the administration of the law of distribution to permit such a question to be raised. We will therefore adopt a conventional rule to determine the validity of these preferences. In all cases where an insolvent pays or secures a creditor to the exclusion of others, and that creditor is aware that he is so when he receives it, he shall run the risk of the debtor's continuance in business for four months. If the law which requires equal distribution is not called into action for four months, the transaction, if otherwise honest, shall stand; but if by the debtor himself, or any of his creditors, that law is invoked within four months, the transaction shall not stand, but the money or property received by the party shall become a part of the common fund for distribution."

The doctrine of these cases is still further illustrated by the case of *Clark* v. *Iselin*, 21 Wall. 360. It is, I think, quite evident, from these authorities, that the supreme court does not regard the four-months limitation as an ordinary statute of limitations, analogous to statutes regulating the time within which actions shall be commenced.

Counsel for appellant refers to the case of *Bailey* v. *Glover*, 21 Wall. 342, where it is held that the second section of the bankrupt act, which requires that all suits by or against an assignee in bankruptcy shall be brought within two years after the cause of action accrues, is a statute of limitations, and to be construed as other statutes of that class. But there is a clear distinction between that section and the one now under consideration. The former fixed and limited the time within which suits could be brought, and was therefore clearly a statute of limitations, pure and simple. The latter describes the acts which shall constitute a fraudulent preference, and has no relation to the matter of limiting the time for bringing suits. It is not a statute of limitations within the usual and ordinary meaning of those terms. In describing the acts which will amount to a preference, congress has seen fit, in this section, to make the time when the preference is given an essential element. It must be "within four months of the filing of the petition by or against the bankrupt." No exception is expressed, and I think it clear from

the rulings of the supreme court, above quoted, that none can be implied.

Nothing is said about notice of the preference to other creditors or about the recording of the instrument, when there is one by which the preference is given. The preference may be by procuring or suffering an attachment or seizure of the debtor's property by payment, by pledge, by assignment, transfer, or conveyance, directly or indirectly, absolutely or conditionally. Notice to other creditors could be given by recording only in the single instance of a preference by means of a conveyance absolute or conditional. If it be by payment or by assignment or pledge it will hardly be claimed that an agreement not to make it public would prevent the running of the four months. It would be very unjust to apply a different rule to the creditor who receives a conveyance or mortgage. These and other considerations seem to have led congress to fix an arbitrary period, or, in the language of Mr. Justice MILLER, they saw fit to "adopt a conventional rule to determine the validity of these preferences." I am constrained, therefore, notwithstanding the force of Judge DILLON's reasoning in *Harris* v. *Bank*, to concur in the opinion of the district judge. The decree of the district court dismissing the bill is affirmed.