## Staunton.

GIBBONEY'S EX'X v. KENT AND ALS.

. SEPTEMBER 16th, 1886.

1. LACHES AND LAPSE OF TIME.—It is an inherent doctrine of courts of equity to refuse relief where there have been gross *laches* in prosecuting rights, or long and unreasonable acquiescence in the assertion of adverse rights. This policy, founded on considerations of natural justice and public policy, is always firmly enforced, especially where the immediate parties to the transactions are dead. *Hatcher* v. *Hall*, 77 Va. 573.

2. IDEM—*Executorial transactions—Case at bar.*—Where executor died in 1867, five years after full settlements with his testator's heirs and distributees, all of whom were then of age, a bill filed by those parties, eighteen years after his first settlement and sixteen years after his final, full and recorded settlement, to surcharge and falsify his executorial transactions, will not be entertained.

Argued at Wytheville. Decided at Staunton.

Appeal from decrees of circuit court of Montgomery county, pronounced December 5, 1878, December 5, 1882, and May 19, 1883, respectively, in the cause of Jacob Kent's heirs and distributees, complainants, against Elizabeth G. Gibboney, executrix of Robert Gibboney, executor of said Jacob Kent, and others, defendants. The decrees were unfavorable to the executrix, and she obtained an appeal and *supersedeas.*

Opinion states the case.

· *J. W. Caldwell,* for the appellant.

*W. R. Staples, T. E. Sullivan,* and *George G. Junkin,* for the appellees.

FAUNTLEROY, J., delivered the opinion of the court.

The record discloses the following case: In the year 1858, Jacob Kent, of the county of Montgomery, in Virginia, died seized of a large landed estate, and possessed of large personal property, and left no will. On the 8th of June, 1858, at the request of the children of the said Jacob Kent, who were entitled as heirs and distributees of his estate, Robert Gibboney qualified as administrator of the estate of the said intestate.

The personal assets which came into his hands amounted to $57,500, inclusive of slaves of the appraised value of $33,500. The indebtedness of the estate amounted to about $43,500. A public sale of most, if not all, of the said slaves was necessary; but, as some of the said children were extremely averse to a public sale of the slaves, to avert it, and, at the same time, to indemnify the administrator in the premises, it was, by common agreement, arranged between them and the administrator that each of them might take such of said slaves as he or she might select, at their appraised value; said administrator to account for them at the same value, and to sell the residue at private, instead of at public sale; and at the same time that he should be empowered, in writing, as agent of the said children and heirs of Jacob Kent, deceased, to sell all the real estate of which said Jacob Kent had died seized, either at public or private sale, on such terms as he might think best. Written papers to such effect were duly executed, and appear in the record.

Accordingly, the said Gibboney, in the due exercise of his said powers, as administrator and as agent, disposed of all the property composing the estate, mainly to and among the said children, and the residue to strangers; and out of the proceeds he paid all charges and debts, and then to the several children and heirs he paid their respective shares of the surplus; and

of his said transactions he returned to the county court of Montgomery county aforesaid, four several statements or accounts, which were confirmed by the said court and ordered to be recorded.

These settlements were made before commissioners duly appointed by the county court of Montgomery, and they showed balances due to the administrator and agent, while they left in the hands of the said Gibboney, as administrator, only a very few small claims due the estate, of a slow and doubtful character and trifling face value; and as agent for the sale of the lands, only the uncollected purchase money of one of the parcels of the said lands, and these small and doubtful claims, and purchase-money bonds for this parcel of land were put into the hands of one of the distributees, who resided in the immediate neighborhood of the debtors, and said settlements were considered to be in full of said Gibboney's trust and responsibility in the premises. The said distributees were all of age at the commencement of these transactions, and all of them but one resided in Montgomery county; and, in August, 1862, in anticipation of these said settlements, they all united in deeds to the several purchasers of the said lands, reserving liens for the unpaid purchase money. Copies of these deeds are found in the record.

In April, 1867, Robert Gibboney died, testate, and the appellant, Elizabeth G. Gibboney, qualified as executrix of his will.

In April, 1878, fifteen years after the aforesaid settlements of the administrator with the heirs and distributees, duly recorded and supposed to be final—eighteen years after the first of them had been confirmed by the county court and ordered to be recorded, in their immediate neighborhood—and eleven years after Robert Gibboney's death, and when his estate had been in main distributed and mostly consumed, the bill

in this suit was filed; in which it is sought to have all the aforesaid settlements of the administrator, Robert Gibboney, with the heirs and distributees of Jacob Kent, ignored, and an account *de novo* of all his said transactions; and failing in that, to have the said settlements surcharged and falsified in a long list of particulars.

At the May term, 1878, of the circuit court of Montgomery county, the appellant, Elizabeth G. Gibboney, executrix of the will of Robert Gibboney, deceased, filed her answer to this bill, in which she denies the amenability of her testator's, Robert Gibboney, estate, to account further to the heirs and distributees of Jacob Kent, deceased, because of his administration of his estate and because of his agency to sell the lands; pleads the statute of limitations; and the finality of settlements duly made and recorded, deemed satisfactory at the time, and acquiesced in by all parties in interest, during the life of Robert Gibboney and since his death, for nearly twenty years. Along with this answer, she files exhibits and pleads the loss of records, &c., by the war, the death of her testator, and the laches of the complainants.

A replication was put in to this answer, and, without any other proceeding, the court, at the December term, 1878, entered the decree of December 5th, 1878, by which it ordered an account, and referred the cause to a master commissioner, on motion of the plaintiffs, to take, settle and report the accounts of Robert Gibboney, as administrator of Jacob Kent, deceased; an account of his receipts and disbursements as attorney in fact for the sale of the real estate of Jacob Kent's heirs; an account of the distributive share of each of Jacob Kent's distributees in the personal estate, and of the interest of each in the funds arising from the real estate, &c. Under this order Commissioner Wade, on 20th of November, 1879, filed his statements of the several accounts therein directed; to

which report exceptions were at once filed by both the com-
plainants and defendant. At the hearing first had of the cause,
at December term, 1882, the decree of December 5, 1882, was
entered. This decree falsified the settled accounts of Robert
Gibboney, both as administrator of Jacob Kent and as agent
of his heirs for the sale of the lands, in several important par-
ticulars, denying to him credits and commissions which had
been allowed to him, in those approved and recorded settle-
ments, and recommitted the report of Commissioner Wade, to
be reformed accordingly.

On the 23d April, 1883, Commissioner Wade returned his
reformed report; and on May 19th, 1883, the court, in confor-
mity with the same, entered the decree of that date.

We are of opinion that the decree of December 5th, 1878,
is wholly erroneous; and, instead of directing an account, it
should have dismissed the bill. The defence made by the
answer, which is strictly responsive, and in every point sup-
ported by the exhibits therewith filed, satisfactorily refutes
every pretence put forward in the bill, either to disregard the
duly approved and recorded settlements, pleaded as probate
court records; or to surcharge and falsify them in any item or
particular of the least consequence to their stability, as a bar
to the stale demands and laches of the complainants, and should
have prevailed.

The record shows that even if the recorded settlements were
to be disrespected, the evidence taken before the commissioner
and reported by him did not vary the case from that made by
the answer, and showed, on the whole, a balance in favor of
appellant's testator. In the case of *Hatcher* v. *Hall*, 77 Va. (2
Hansbrough), 576, Lewis, P., says: " It is an inherent doctrine
of courts of equity to refuse relief where there has been gross
*laches* in prosecuting rights, or long and unreasonable acquies-
cence in the assertion of adverse rights. And the principle,

founded, as it is, upon considerations of natural justice and
public policy, is always firmly enforced, especially in cases
involving transactions to which immediate parties are dead."

In the case of *Harrison* v. *Gibson*, 23 Gratt. 212, Judge
Staples, speaking for the court, says: "It is a familiar doctrine
of courts of equity that nothing can call forth these courts
into activity but conscience, good faith, and reasonable dili-
gence.  Where these are wanting, the court is passive and .
does nothing.  *  *  *  The cases do not fix any period as
limiting the demand for an account.  If, from the delay which
has taken place, it is manifest that no correct account can be
rendered, that any conclusion to which the court can arrive
must, at best, be conjectural, and that the original transactions
have become so obscured by time and the loss of evidence, *and
the death of parties,* as to render it difficult to do justice, the
court will not relieve the plaintiff."  Accordingly, it was held
that although the time which had elapsed might not, of itself,
constitute a statutory bar to the claim asserted in that case,
yet, that the neglect of the parties for *fourteen years* to prose-
cute their suit, when considered with other circumstances in
the case, justified the dismissal of the plaintiff's bill.  (See
*Carr* v. *Chapman,* 5 Leigh, 176, and *Stamper* v. *Garnett,* 31
Gratt. 550.)

Robert Gibboney died in April, 1867, having thus survived
the settlement in full with the heirs and distributees of Jacob
Kent, deceased, made December 26, 1862, by nearly five years,
and the war for more than two years, during all which time
the said settlement in full with the parties themselves, which,
immediately after it was so made, had been laid before a com-
missioner of the county court of Montgomery county, and by
him returned to the said court, and there approved and ordered
to be recorded, had been and remained so of record, challenging
the inspection of all concerned in interest; and for the last

three years prior to his death, with nothing whatever to prevent, hinder, or delay their making, while Robert Gibboney was yet alive and fairly able to defend himself, the complaint which the complainants now make in their bill, fifteen years after the death of Robert Gibboney—eighteen years from the date of his first settlement—sixteen years after his final and full recorded settlement, and after the turmoil and destruction of four years of civil war, and the long period of durance vile which followed in its wake.

For the foregoing reasons, we are of opinion that the decrees complained of are erroneous, and must be reversed and annulled, and the bill be dismissed; and it is so ordered.

DECREES REVERSED.