### Richmond

HOGG & OTHERS v. SHIELD & OTHERS.

January 16, 1913.

Absent, Cardwell, J.

1. EQUITY PLEADING—*Errors in Final Decree—How Corrected.*—If, in a suit to ascertain the debts of a decedent and subject his real and personal estate to the payment thereof, a final decree has been entered declaring that the assets of the decedent have been exhausted in the payment of his debts and that there is nothing in the hands of the court or due from the purchasers of land sold in the cause to which the complainants are entitled, the complainants have the right, if the decree is erroneous, and there is really money due from purchasers, either to appeal from the decree, or to have the cause reinstated on the docket and reviewed within the time prescribed by law.

2. EQUITY PLEADING—*Bill to Impeach a Final Decree—Laches—Stale Demands.*—After an unexplained delay of more than twenty-four years from the entry of a final decree in a creditors' suit declaring that the object of the suit has been accomplished, during which time the purchasers of land sold in the suit have died and the lands have been devised and sold, and creditors have departed this life, a court of equity will not enteratin a bill filed by heirs of the debtor charging that some of the purchasers of land sold in the creditor's suit had not paid all the purchase price of said land and seeking to subject the land to such payment. The complainants are barred by their laches.

3. EQUITY PLEADING—*Stale Demands—Allegations of Bill—Laches—How Defense Made.*—A party who seeks the aid of a court of equity, after long delay in the assertion of a claim, should set forth in his bill specifically what were the impediments to an earlier prosecution of his claim, how he came to be so long ignorant of his rights, and the means, if any, used by the defendant to fraudulently keep him in ignorance, and how and when he first came to a knowledge of the matters alleged in his bill; otherwise the chancellor may justly refuse to consider his case, on his own showing, without enquiring whether there is a demurrer, or formal plea of the statute of limitations contained in the answer. Laches is a defense peculiar to courts of equity,

founded on the lapse of time and the staleness of the claim where no statute of limitations governs, and courts of equity act upon their own inherent doctrine of discouraging antiquated demands. In the case in judgment the chancellor might, of his own motion, if there had been no demurrer, have refused to consider complainants' cause, and have dismissed their bill. Certainly there was no error in sustaining a demurrer to the bill.

Appeal from a decree of the Circuit Court of York county. Decree for the defendants. Complainants appeal.

*Affirmed.*

The opinion states the case.

*Jones & Moomaw* and *S. O. Bland,* for the appellants.

*F. S. Collier & Son* and *John W. Friend,* for the appellees.

BUCHANAN, J., delivered the opinion of the court.

Prior to June, 1866, Thomas Hogg, Sr., departed this life intestate, leaving a considerable real and personal estate. On the 18th of that month a general creditors' suit was instituted against his personal representative and heirs to subject his property to the payment of his debts. Accounts were taken ascertaining the assets and liabilities of the decedent's estate. The proceeds of the personal estate and the rents and profits of the real estate for five years being insufficient to pay the said indebtedness, the lands were sold in the year 1871 under decrees of the court, partly for cash and the residue on time. The purchasers of the lands sold were Robert Norton, George Rorke, Boliver Shield, L. R. Hogg, A. R. Hogg and John B. Hogg. These sales were reported, confirmed and the special commissioners directed to collect the different payments as they became due. The purchasers not paying

the purchase money promptly as it became due, rules were awarded against them to show cause why the lands purchased by them should not be resold to pay the amounts due from them (as shown by reports taken in the cause), unless paid within a named time.   Payments were made from time to time by the purchasers or some of them, and the funds in the hands of the court distributed, after the payment of costs and expenses, *pro rata* among the creditors, it having been ascertained by the court that the assets of the estate, real and personal, would only pay a little over fifty-four *per cent.* of the decedent's debts.   At the November term, 1882, an order was entered directing one of the commissioners of the court to ascertain and report the balance due from Bolivar Shield on the purchase price of land purchased by him.   At the November term, 1885, the following order was entered:

"It appearing to the court that the object of this suit has been accomplished, it is ordered to be removed from the docket."

On the 14th day of July, 1886, the following order was entered in vacation:   "On motion of the plaintiff, it is ordered that S. G. Cooke, one of the commissioners of this court, inquire and report to this court the amount due by Bolivar Shield, upon his purchase of the tract of land sold under proceedings in this cause, formerly owned by Thomas Hogg, crediting the said Shield by the amount due said Shield from the estate of the said Thomas Hogg. The said commissioner will report any other matter connected with said inquiries deemed pertinent by himself, or specially required by any party interested."

In April or May, 1910, a suit was instituted by the heirs at law of the said Thomas Hogg, Sr., against certain of the purchasers of land sold in the said creditors' suit.   The heirs at law in their bill set out in detail the proceedings had in the creditors' suit, and file as exhibits with their bill the original papers of the creditors' suit and of an-

other cause heard therewith, and pray that both may be considered as a part of their bill.  It is further alleged in the bill that the vacation order entered in the creditors' suit in July, 1885, is absolutely void because entered after that cause had been stricken from the docket, and when, even if the case had been on the docket, the judge had no power to enter a vacation order.  It is alleged further that all the debts against the estate of Thomas Hogg, Sr., are long since barred by the statute of limitations as well as uncollectable on account of the laches of the creditors; that considerable amounts of the purchase money for lands sold in the said creditors' suit are still due and unpaid and that the complainants are entitled to whatever money is due from such purchasers with interest thereon; that Bolivar Shield, one of the purchasers, has departed this life testate, having devised the land purchased by him to his son, Copeland S. Shield, and that the latter has sold the land to the "Investment Corporation," a corporation created by and existing under the laws of the State of Delaware.  The bill prays that Copeland S. Shield, the Investment Corporation, J. B. Hogg and D. M. Norton, purchasers of lands sold in the creditors' suit, and Annie L. Hogg, the widow of Leroy R. Hogg (a son of Thomas Hogg, Sr., who had died since his father, and through whom two of the complainants claim) be made parties defendant to the bill and required to answer the same but not under oath.  The prayer of the bill further asked that "if any of the said creditors (of Thomas Hogg, Sr.) are now alive, they may be made parties defendant to this bill, and if any or all of them are dead, or if any of the said purchasers are dead, their personal representatives and heirs at law or distributees and legatees of such as may have died testate be also made parties defendant with apt and proper words to charge them as such  *  *  *  "  and that they be required to answer the bill but not under

oath; that all necessary accounts be taken and especially accounts to ascertain what is the balance due from each and all of the said purchasers; and that they be required to pay over the same to the complainants; and for general relief.

Copeland S. Shield and the Investment Corporation demurred to the bill upon the grounds, among others, that the bill does not show that the complainants have any interest in the subject matter of the suit, and that the bill on its face shows that the complainants have been guilty of gross laches in asserting their demand.

It appears from the bill and exhibits filed therewith and made a part thereof that the assets, both real and personal, would pay but a little over fifty *per cent.* of the indebtedness against the decedent's estate which was being administered in the creditors' suit, so that as a matter of fact the complainants had no interest in the fund which they seek to recover in this case, the whole of it being necessary to pay the indebtedness of their decedent's estate, proved, allowed and ordered to be paid in that cause.

There was a final decree in the creditors' suit in November, 1885, in which the court declared that it appearing to the court that the object of that suit had been accomplished, the cause was ordered to be stricken from the docket. The object of that suit, as appears from the bill in that case and as is alleged in the bill in this case, was to marshall the assets of Thomas Hogg, Sr., to ascertain the creditors and the debts, and to have the said decedent's estate subjected to the payment of his debts. If, as the final decree of the court in that case declared, that had been done, the assets of the decedent had been exhausted in the payment of his debts and there was nothing in the hands of the court or the purchasers of the land sold therein to which the complainants were entitled. If that

decree was erroneous, then the complainants had the right of appeal, or the right to have the cause reviewed or reinstated upon the docket within the time prescribed by law. The averments of the bill show that the said final decree is still in full force and effect.

But if the complainants be not concluded by that decree and a portion of the purchase money had not been paid by the purchasers of the lands sold in the creditors' suit, and the creditors' debts proved in that cause are barred by the statute of limitations and their laches, as alleged, yet the complainants have so long delayed the assertion of any right that they may have that a court of equity ought not to entertain their suit. More than twenty-four years elapsed after the final decree in the creditors' suit was entered before this suit was instituted. During that period purchasers have died, the lands have been devised and sold, creditors have departed this life. So long, indeed, has been the delay that the bill on its face shows that the complainants do not know whether any of the creditors are living, or who are the personal representatives of those who have died, which of the purchasers are living, and where dead who their heirs or personal representatives are. Not only do these facts expressly or impliedly appear from the bill, but there are no facts or circumstances alleged explaining this great delay in the assertion of their claim; indeed, no excuse whatever is offered for what unexplained must be considered the grossest laches. The complainants or those through whom they claim were parties to the creditors' suit. They must, therefore, be presumed to have known what proceedings were had in the cause.

Suggestion is made in argument that some of the heirs of Thomas Hogg, Sr., were infants when the creditors' suit was instituted in the year 1866. That suit was pending nearly twenty years before the final decree in it was

entered, and the cause stricken from the docket in the year 1885. These infants were almost, if not entirely, of age before that date. As before stated, nearly twenty-five years elapsed before this suit was instituted, and there is no allegation in the bill that this long delay in suing was caused by any disability of the complainants or any of them.

Laches, as was said by the Supreme Court of the United States in *Badger* v. *Badger,* 2 Wall. 87, 94-5, 17 L. Ed. 836, "is a defense peculiar to courts of equity, founded on lapse of time and the staleness of the claim where no statute of limitations governs the case. In such cases courts of equity act upon their own inherent doctrine of discouraging, for the peace of society, antiquated demands, and refuse to interfere where there has been gross laches in prosecuting the claim, or long acquiescence in the assertion of adverse rights. Long acquiescence and laches by parties out of possession are productive of much hardship and injustice to others, and cannot be excused but by showing some actual hindrance or impediment caused by the fraud or concealment of the parties in possession which will appeal to the conscience of the chancellor.

"The party who makes such appeal should set forth in his bill specifically what were the impediments to an earlier prosecution of his claim, how he came to be so long ignorant of his rights and the means used by the respondent to fraudulently keep him in ignorance, and how and when he first came to a knowledge of the matters alleged in his bill; otherwise the chancellor may justly refuse to consider his case, on his own showing, without enquiring whether there is a demurrer or formal plea of the statute of limitations contained in the answer. See also *Adams* v. *Adams,* 22 Wall. 178, 22 L. Ed. 504; *Rowe* v. *Bentley,* 29 Gratt. (70 Va.) 756, 762-3; *Hatcher* v. *Hall,* 77 Va. 573, 576-7; *Gibboney* v. *Kent,* 82 Va. 383, 4 S. E.

610; *Eubank* v. *Barnes,* 93 Va. 153, 156, 24 S. E. 908; *Covington* v. *Griffin, &c.,* 98 Va. 124, 128-9, 34 S. E. 974; *Garrett* v. *Finch,* 107 Va. 25, 30, 57 S. E. 604.

There being no allegation of facts or circumstances in the bill explaining or excusing the gross laches of the complainants in asserting their claim, or even tending to do so, the chancellor, upon the authorities cited, might of his own motion, if there had been no demurrer, have refused to consider the complainants' case and have dismissed their bill. Certainly he did not err in sustaining a demurrer to and dismissing it on that ground.

The decree appealed from must be affirmed.

*Affirmed.*