## HENRY J. BECKER v. ALBERT OLKON.[1]

February 21, 1929.

No. 27,016.

*George G. Chapin,* for appellant.
*Charles E. Bowen* and *Hermon W. Phillips,* for respondent.

HOLT, J.

Action to cancel two promissory notes and two mortgages securing the same as void for usury. Findings were made in plaintiff's favor. Defendant appeals from the order denying a new trial.

Plaintiff's brother, John A. Becker, held a registered title to the three contiguous lots 13, 14 and 15, block 1, of G. V. Bacon's subdivision in the city of St. Paul. While such owner and on December

[1]Reported in 223 N. W. 777.

428

3, 1925, John gave a mortgage on lots 13 and 14 to secure his promissory note for $500. The mortgagee assigned the mortgage to defendant. On February 8, 1926, John, then owner of lot 15, gave a deed thereof to defendant to secure a promissory note for $300 for money borrowed. John was unable to pay the obligations when due, and plaintiff was sent to defendant to have him take the lots for the debt. The interview resulted in an understanding between defendant and plaintiff whereby the latter was to build houses, he being a builder, and defendant was to advance the money needed. The plan was that as soon as the building on a lot had been so far completed that a first mortgage of a considerable sum could be obtained it should be done, and defendant was to take a second mortgage for the money he had advanced, such second mortgage also to secure the encumbrance defendant held when the building was begun.

The first house built under this arrangement was on lot 15 upon which a first mortgage in the sum of $2,300 was placed. Then followed a house on lot 14, upon which a first mortgage of $1,800 was placed. When it came to the giving of the second mortgage to defendant on lot 15, he claimed it should be for $1,400. It is clearly established that the first loan of $300 (made by defendant to John) and the money advanced by defendant to plaintiff for the erection of the house on that lot did not exceed $1,000. And plaintiff asserts that when it came to the execution of the note and the second mortgage to secure it, defendant claimed that a commission to him of $400 should be included. Since there was also interest provided at seven per cent, it is clear that if this $400 was for the forbearance or use of the money loaned and advanced usury tainted the transaction.

Defendant's contention is that his agreement with plaintiff was that plaintiff was to build a house on each of the three lots and defendant was to advance the money needed above what was obtained on a first mortgage; that the building of the houses was a joint enterprise; that the houses were to be sold and, after deducting from the proceeds the amount due defendant for the money advanced and

the old loan, the balance was to be equally shared between plaintiff and defendant; that there was no ready market when the first building was completed, and so to secure defendant the second mortgage was made, the parties estimating that one-half the profit on a sale would be $400; hence it was included in the mortgage. If that had been the agreement the note and mortgage were free of usury.

Essentially the same diverging contentions are made in respect to the second mortgage and accompanying note of $1,600 upon lot 14, the only difference being that, according to plaintiff, the commission or bonus then exacted was $450, and, according to defendant, that the estimated profit on that venture was $900, one-half of which was defendant's share and was included in the mortgage and note.

The findings cover many details not necessary to mention for an understanding of the questions raised. The substance of the pivotal finding is that in the one transaction there was a loan of $1,000 evidenced by a $1,400 note and mortgage, and in the other a loan of $1,125 evidenced by a $1,600 note and mortgage, and that in each there was a corrupt agreement for usury. The findings are attacked as unsupported and the conclusions of law as not justified by the facts found. The main attack is not that the trial court went contrary to the weight of the evidence when defendant's version of the transaction was rejected and plaintiff's accepted; but rather that on plaintiff's own testimony and the undisputed facts the applicable rules of law exclude usury.

In substance the argument is: The agreement for more than the statute permits must be made when the money is loaned in order to constitute usury. Here the agreement to advance money and its actual advancement or loan was without any understanding as to compensation or interest to be charged in the notes and mortgages sought to be canceled. As to the latter the rate of interest and commission first came up at the time of their execution, and all the money therein involved had been previously received and when so received plaintiff had executed demand promissory notes to defendant carrying seven per cent interest. These were not tainted with

usury. The second mortgages and notes accompanying them were but extensions of valid loans. Now when it came to the moment of giving these second mortgages and accompanying notes, defendant gave therefor his unsecured valid demand notes for money loaned and the valid first liens he had before any building and permitted a first mortgage to come in ahead.

The argument is more plausible than sound. That there may be a trade of securities or shifting of mortgage from being a first lien to a second or third warranting a bonus or compensation which should not be included in any computation of the legal interest in the new agreement may be conceded. But such trade or shift may not serve as a cloak or cover for usury. In this case the shifting of the small first liens of $300 and $500 to become parts of second mortgages could hardly warrant the taking of bonuses of $400 and $450. · The surrender or trade of the unsecured demand notes for the second mortgages and notes would rather call for a consideration from defendant than the reverse. Again the demand notes given as the money was advanced are not of so much significance on the question of usury. It was never contemplated that they should be any more than a convenient mode of securing to defendant interest on the money as soon as it left his hands and of keeping accurate account of what should be included in the second mortgages and the notes secured thereby. The money was advanced, the first mortgages were obtained, defendant's first liens of $300 and $500 were discharged, all as steps looking toward the execution of the second mortgages and notes. We think the evidence justified the court in finding each second mortgage and note usurious. It was a question of fact. The record does not as a matter of law show these instruments free of usury so as to require findings to that effect.

In the answer defendant set forth that before any buildings were begun on these lots he had loaned John Becker, the owner, $300, receiving his deed to lot 15 as security; also that John had executed a mortgage on lots 13 and 14 to secure a note for $500 for money loaned him by one Olson, which note and mortgage had been transferred to defendant; that when the first mortgages were executed

after the houses were built these first liens held by defendant were satisfied and included in the amount of the notes secured by the second mortgages which plaintiff seeks to have canceled. Defendant asked for such relief as he may be entitled to.

The reply does not deny the existence of the encumbrances placed on the lots above mentioned by John, and during the trial no attack was made thereon. It was really conceded that John's deed to defendant was an equitable mortgage given to secure the loan of $300, and that the $500 mortgage held by defendant when the building on lot 14 was started was a valid first mortgage. Neither was paid except as included in the instruments now canceled as usurious. It is true that, this being a statutory action to cancel the notes and mortgages (G. S. 1923, § 7040) if usury is found the whole instrument is vitiated. But on the facts alleged in the answer and as to which the trial revealed no controversy, defendant is entitled to the equitable relief of having his valid liens reinstated on lots 15 and 14, as between him and plaintiff, but of course subject to the first mortgages of $2,300 and $1,800, which defendant permitted plaintiff to place thereon.

In Burnhisel v. Firman, 22 Wall. 170, 179, 22 L. ed. 766, after stating that in equity it is the rule that an encumbrance shall be kept alive or considered extinguished as shall most advance the justice of the case, the court says:

"The application of this principle occurs most frequently in cases of usury. It is well settled that if a security founded upon a prior one be fatally tainted with that vice, * * * and the latter one thereafter be adjudged void, the prior one will be revived, and may be enforced as if the latter one had not been given."

That defendant is entitled to his original security on lot 15 for the $300 loaned, and on lot 14 for the $500 when the instruments embracing usury are canceled, is supported by Patterson v. Birdsall, 64 N. Y. 294, 21 Am. R. 609, where the syllabus is:

"A valid and subsisting obligation is not destroyed because included in a security or made the subject of a contract void for

usury; although formally satisfied and discharged it may be revived and enforced in case the new security or contract is invalidated."

The same principle is found in Barrows v. Thomas, 43 Minn. 270, 45 N. W. 443; Avery v. Creigh, 35 Minn. 456, 29 N. W. 154.

In this case defendant does not claim to have his demand notes against plaintiff revived nor the personal obligations of John Becker on the old loans of $300 and $500 revived; merely that as to plaintiff's interest in the premises there should remain existing liens on lots 15 and 14 to those amounts, subject to the first mortgages of $2,300 and $1,800 now thereon. We see no reason why that should not be done in this lawsuit and so end the dispute between these parties. Should defendant desire the $500 to be also a lien on lot 13, which apparently is still owned by John Becker, it would necessitate making him a party. The case will therefore be remanded to the trial court for amendment of the findings and conclusions of law in conformity herewith and, if necessary, to take additional testimony as to the amount due on the $300 and $500 loans for which liens should be declared upon said lots 15 and 14.

The order denying a new trial is modified to the extent indicated.