FARMERS' LOAN & TRUST CO. v. NORTHERN PAC. R. CO. et al.

(Circuit Court, E. D. Wisconsin. April 19, 1899.)

No. 489.

1. INTEREST—RATE ON BONDS AFTER MATURITY—EFFECT OF DECLARING DEBT DUE FOR DEFAULT IN PAYING INTEREST.

An election to declare railroad bonds due before they would otherwise mature, under a clause of the mortgage securing them, because of default in the payment of interest coupons, has no other effect than to render the principal presently collectible, and the provision of the bonds fixing the rate of interest thereon during the entire term for which they were to run continues in force until decree; but, as to interest coupons which have matured by their own terms, in the absence of any provision of the contract fixing the rate of interest after maturity, the legal rate will govern.

2. CONCLUSIVENESS OF DECREE—IMPEACHMENT IN SUPPLEMENTAL PROCEEDINGS.

A decree in a suit to foreclose a railroad mortgage, which at the instance of the trustee in the mortgage determines the amount due on the mortgage debt, including interest accrued on the bonds and the matured coupons, renders the amount of such interest res judicata as to all bondholders represented by the trustee, and all others who are or may thereafter become parties to the suit, and the correctness of the decree in that respect cannot be questioned in supplemental proceedings brought thereunder.

On Exceptions of Northern Pacific Railway Company to Report of the Master as to Interest on Bonds.

Sullivan & Cromwell, for exceptant.

JENKINS, Circuit Judge. The question to be determined arises upon exceptions to the report of the special master filed September 20, 1898. The Northern Pacific Railway Company, the purchaser of the Northern Pacific Railroad under the decree of foreclosure, filed its claim with the special master under the sequestration proceedings for payment of the amount due for principal and interest upon the consolidated bonds of the Northern Pacific Railroad Company owned by claimant. The amount of the principal of these bonds held by the claimant is $44,923,000. The exceptions present the question of the rate of interest which should be allowed upon the principal of the bonds and upon the interest coupons after their respective dates of maturity. The special master cast the interest at the rate of 5 per cent. per annum; the claimant insists that it should be cast at the rate of 6 per cent. per annum; and this is the contention. The difference in the amount of interest, computed at the two rates mentioned, is $1,664,382; so that the question, although one of no great difficulty, is of moment to the claimant.

The bonds in question bear date December 2, 1889, and are respectively payable on the 1st day of December, 1989, "and interest thereon in the meantime at the rate of five per cent. per annum, * * * semiannually, on the first day of June and on the first day of December in each year." Coupons were attached to each bond for the semiannual interest contracted to be paid for the entire period of 100 years. By article 16 of the trust deed securing these bonds it was provided that in case of default in the payment of any installment of interest, or of any coupon annexed to the bonds, such

default continuing for the period of one year, at the election of the trustee the principal of all the bonds secured by the instrument should become immediately due and payable. Default was made in the payment of the coupons maturing on the 1st day of June, 1893, and upon all succeeding maturing coupons. After December 1, 1895, the trustee duly elected that the entire principal sum of each and every of the consolidated mortgage bonds should forthwith become due and payable. The question is whether the contract rate of interest continued after default by the obligor and election by the trustee, or whether the legal rate of 6 per cent. should control.

I have found, and have been referred to, no case which directly rules the question involved, and must ascertain the principle which should govern from the rulings of the supreme court in cases more or less analogous. In Brewster v. Wakefield, 22 How. 118, it was ruled that a stipulated rate of interest greater than that allowed by statute, in the absence of stipulation for a rate of interest after maturity, would not be allowed after maturity, and that the legal rate should govern. In Cromwell v. Sac Co., 96 U. S. 51, 60, it was held, under the statute of Iowa allowing the same rate of interest after maturity as that expressed in the contract to be paid until maturity, that the stipulated rate attended the contract until it should be merged in judgment. In Holden v. Trust Co., 100 U. S. 72, it was ruled that, under the law prevailing in the District of Columbia, a note payable with 10 per cent. interest only drew that rate up to its maturity, and thereafter the legal rate of 6 per cent.; and the principle is there stated by Mr. Justice Swayne as follows:

"If payment be not made when the money becomes due, there is a breach of the contract, and the creditor is entitled to damages. Where none has been agreed upon, the law fixes the amount according to the standard applied in all such cases. It is the legal rate of interest where the parties have agreed upon none. If the parties meant that the contract rate should continue, it would have been easy to say so. In the absence of a stipulation, such an intendment cannot be inferred."

The case of Ewell v. Daggs, 108 U. S. 143, 2 Sup. Ct. 408, may also be referred to, but it does not alter the rule declared. So that the principle would seem to be established that the legal rate of interest is to be allowed as damages for the nonfulfillment of the contract, unless by the contract itself it is manifest that a different rate was intended to govern. Interest upon a matured debt is given by the law as damages for the improper detention of money. The rate specified by statute is allowed only in the absence of contract stipulation upon the subject, speaking to a period subsequent to its maturity. In the one case the obligation to pay interest after maturity arises from the assent of the parties; in the other, from a duty imposed by law.

Here the obligor by its bond agreed to pay a certain sum of money on December 1, 1989, a period of 100 years from the date of its obligation, and to pay interest upon its debt in the meantime,—that is, until December 1, 1989,—at the rate of 5 per cent. per annum. It attached to each obligation coupons representing the semiannual

interest at that rate and for that period of time. The stipulation of the trust deed which authorizes the trustee at its election to mature the principal upon default in the payment of interest does not purport to abrogate the rate of interest which the obligor agreed to pay during the stated period. The exercise of the election matured the principal, but left untouched the stipulation for interest. The rate was agreed upon by the parties to the contract, and was to continue during a stated period of time, and that rate should govern during that period of time, notwithstanding that by the election of the trustee the principal was matured at an earlier date than that specified in the contract. If the stipulated rate was greater than the legal rate, could the trustee, after election to mature the principal, be required to receive only the legal rate of interest? I think it logically follows, from the principle declared by the supreme court, that in such case the contract rate would govern, because the parties have agreed upon the rate for the period up to the time specified in the contract as the date of the maturity of the debt. And so, e converso, the trustee having exercised the election to mature the debt before the stipulated period of maturity, no one pursuing the debtor under such election can claim other benefit than to secure present payment of that which, without default of the debtor, could not be enforced until the period stipulated in the contract. If, after default and election to mature the debt, the creditor should receive his interest, or a court of equity should relieve from the default, the contract would remain intact in all its provisions. I am satisfied that the default by the debtor and the election by the trustee did not change the stipulation of the contract with respect to the rate of interest, and that the contract rate continued after the debt was matured by the election of this trustee.

The special master allowed interest upon the coupons at the like rate of 5 per cent. If that question was not embarrassed by considerations to which I shall presently advert, I am free to say that the creditor was entitled to interest at the rate of 6 per cent. upon the coupons. The law allows interest on a coupon for interest. It is a contract to pay a specified sum on a specified day. There is no provision in them, nor in the trust deed, with respect to the payment of interest upon the interest coupons. Consequently the legal rate of interest should prevail. But there is this difficulty in applying that principle to the present case: The trustee filed its bill to foreclose the trust deed. That cause was consolidated with the previous suit of Winston to subject the property of the debtor to the payment of its debts. In the consolidated cause the trustee demanded of the court that it ascertain the amount due upon the mortgage, and decree therefor, and for the sale of the mortgaged property pledged for the debt. A decree passed pursuant to the request of the trustee, in which the court determined the amount due on these bonds, the interest upon the coupons as well as upon the principal being therein computed at the rate of 5 per cent. per annum. This was the rate which the trustee asked the court to determine should govern, and it was so determined. The bondholders,

so far as they are represented by the trustee in that proceeding, are bound by that decree. If it be said that the effect of that decree was only to determine the amount which should be chargeable upon the mortgaged property, and that the assets now sought to be reached were not covered by the mortgage, it is a sufficient answer that the claimant here became a purchaser under that decree, and a party to that suit, and that the bill in sequestration filed by the trustee is not an original bill, but supplemental to the bill of foreclosure, and to the bill of Winston, and that the claimant here comes in under that bill seeking relief, and that all the determinations in these proceedings from the commencement of the litigation are res judicata; in other words, coming in under the decree, and asking for relief thereunder, the claimant accepts and adopts all that has been determined, and is not entitled to relief otherwise than in pursuance of the previous decrees. I therefore think that the question of the proper rate of interest to allow upon the coupons is foreclosed by the decree of the court passed at the request of the representative of the bondholders, and that decree cannot now be impugned for error.

The exceptions are overruled, and the report of the master confirmed.