JEWELL REALTY COMPANY *v.* KANSAS CITY LIFE INSURANCE COMPANY.

Opinion delivered October 13, 1930.

*Robinson, House & Moses* and *W. R. Roddy,* for appellant.

*Carmichael & Hendricks,* for appellee.

McHANEY, J. The appellee brought this action to foreclose a mortgage on a large tract of land in Chicot County, Arkansas, known as Sunnyside Plantation. On the 21st day of July, 1926, the appellant executed its

note for $225,000, secured by a mortgage on said plantation, to become due on the 21st day of July, 1931, and bearing interest at the rate of 6 per cent. per annum, payable semi-annually, from date until maturity, and thereafter at the rate of ten per cent. per annum. Said note contains this provision: "If default is made in the payment of any interest hereon, the lawful owner may declare the whole principal and accrued interest then unpaid upon the note due, and may at once proceed to collect the same." The mortgage given to secure said note contains a like provision as that quoted above, and a further provision as follows: "Said party of the first part (appellant) hereby agrees to pay all taxes and assessments levied upon said premises or upon the interest of the party of the second part therein, or upon this mortgage or the money secured hereby, when the same becomes due, without regard to any law heretofore enacted or hereafter to be enacted imposing payment of the whole or any part thereof, upon the party of the second part; * * * and, if not so paid, the said party of the second part, or the legal holder or holders of the indebtedness herein secured, may, without notice, declare the whole sum of money herein secured due and payable at once, or may elect to pay such taxes, assessments and insurance premiums; and the amount so paid shall be a lien on the premises aforesaid and be secured by this mortgage, and collected in the same manner as the principal debt hereby secured with interest thereon at the rate of 10 per cent. per annum." The fifth paragraph of the mortgage provides: "Said party of the first part hereby agrees that if default be made in the payment of taxes, assessments, insurance premiums, or any of the installments of interest on the indebtedness herein secured before the maturity of the debt, that the party of the second part shall, at its option, have the right to take possession of all the property * * * and the party of the second part, or the legal holder or holders of the indebtedness herein secured, may at its or their election, as

hereinafter provided, mature the whole of said indebtedness and proceed to foreclose this instrument.''

Thereafter, appellant permitted the taxes for 1926 and 1927 to become delinquent, and permitted certain levee and drainage taxes on special assessments in levee and drainage districts to become delinquent, which the appellee paid, and elected to declare the whole amount of the indebtedness due and payable, and did so by filing this suit on April 28, 1928. On a trial of the case, the chancery court held that the appellee was entitled to recover interest on the balance of the principal indebtedness of $225,000 and taxes paid at 10 per cent. per annum from the date of the filing of the suit to the date of the decree, which was January 8, 1930, and that the total amount of the judgment then entered should bear interest thereafter at 10 per cent. per annum. The decree in this regard reads: ''The plaintiff is entitled to interest at 10 per cent. on principal from the date this suit was filed, and judgment is rendered on that basis.''

The only question presented by this appeal, for our determination, is whether the interest should be figured on the basis of 6 per cent. or 10 per cent. from the date the suit was filed until the date of the decree.

Did the mortgagor contract to pay a higher rate of interest on the principal indebtedness prior to the maturity date of the note, July 21, 1931, in the event default was made in the payment of interest or taxes and the whole indebtedness declared due under the power given in the note and mortgage? After a careful consideration of all the cases cited by counsel on both sides, we have reached the conclusion that there was no agreement to this effect. The note provides that it shall bear interest at 6 per cent. per annum, payable semi-annually, from date until maturity, July 21, 1931. It further provides that interest and principal not paid when due shall bear interest at 10 per cent. per annum. It further provides that: ''If default is made in the payment of any interest herein the lawful owner may declare the whole principal

and the accrued interest then unpaid, due, and at once proceed to collect the same.'' The mortgage makes a similar provision with reference to taxes and assessments, that is, if the mortgagor fails to pay same, the mortgagee or holder of the note may pay same, and shall be a sum secured by the mortgage, which shall bear interest thereafter at 10 per cent. per annum, and may also declare the whole indebtedness due and payable. These, in substance, are the terms and conditions of both the note and the mortgage. Neither the note nor the mortgage provides that, in the event default is made in the payment of interest or taxes, and the holder exercises his power to declare the whole amount due and payable, the principal indebtedness shall thereafter, that is, from that date, bear interest at the rate of 10 per cent. per annum. To hold, as the court did in this case, that appellee is entitled to collect 10 per cent. interest from the date he declared the whole amount due and payable, by reason of the default in the payment of taxes, that is, the date of filing suit, is to read a provision into the contract which is not there. The parties might have so stipulated, if they had seen proper to do so. But they did not. On the contrary, they provided in express terms that the principal indebtedness should bear interest at 6 per cent., payable semi-annually, from July 21, 1926, to July 21, 1931, and thereafter it is provided that the principal indebtedness shall bear interest at 10 per cent. per annum. It was agreed that interest not paid at maturity and taxes paid by appellee should thereafter bear interest at 10 per cent. The failure to provide in the contract that the principal indebtedness should bear 10 per cent. interest per annum from its accelerated maturity negatives the idea that the parties so intended. This court has many times held that an agreement which contains a stipulation for interest at the rate of 10 per cent. per annum from date, without the words ''until paid,'' bears only 6 per cent. interest, the legal rate, after maturity, and a judgment thereafter rendered bears a

like rate of interest. *Pettigrew* v. *Summers,* 32 Ark. 571; *Woodruff* v. *Webb,* 32 Ark. 612; *Gardner* v. *Barnett,* 36 Ark. 476; *Johnson* v. *Myer,* 54 Ark. 437, 16 S. W. 121. It has also been held several times that a provision in a note for a higher rate of interest after maturity is valid, where the increased rate after maturity did not exceed the maximum rate allowed by the constitution, article 19, § 13. *Red Bud Realty Co.* v. *South,* 153 Ark. 380, 241 S. W. 21, and cases there cited. In the case last cited the court said: "The notes executed by the corporation to the insurance company bore interest on the principal sum at the rate of 7 per cent. per annum, and contained a provision that, if not paid at maturity, they were to bear interest at the rate of 10 per cent. per annum payable annually until paid. The coupon interest notes also contained a similar provision. Judgment was rendered in favor of the insurance company against the corporation for the principal sum with interest calculated as stipulated in the notes, the judgment to bear interest at the rate of 10 per cent. per annum from the date thereof. Parties may contract for the payment of interest in this State 'not exceeding 10 per cent. per annum on money due or to become due.' Art. 19, § 13, Constitution. Section 7353, Crawford & Moses. So long as the parties contract for a rate of interest that does not exceed the maximum rate allowed by the law, their contracts will be enforced as written. * * * The great weight of authority is to the effect that such contractual increased rate after maturity is regarded as a liquidation of damages for failure to promptly pay, and not as a penalty. 22 Cyc., § 1526."

Counsel for appellee seek to sustain the decree of the lower court on the authority of *Red Bud Realty Co.* v. *South, supra,* but we fail to find any support for appellee in that case. The question at issue here was not there decided. So far as the opinion in that case shows, the notes were all past due according to their terms, as nothing is said by the court about an acceleration clause

in either the notes or the mortgage, or that the notes had been declared due and payable by reason of any default. The question at issue here was not there decided, and, so far as we have been able to find, has never been decided by this court. It has been decided by other courts. In *Farmers' Loan and Trust Co.* v. *Northern Pac. R. R. Co.*, 94 Fed. 454, the question was whether the interest should be cast at 5 per cent. as provided for in the bonds, or 6 per cent. the lawful rate, after the bonds had been declared due under an accelerating clause in the mortgage. The bonds were dated December 2, 1889, and became due and payable on December 1, 1989, "and interest thereon in the meantime at the rate of 5 per cent. per annum, * * * semi-annually, on the first day of June and on the first day of December in each year," with coupons attached. By a provision in the trust deed or mortgage it was provided that, if default be made in the payment of interest or of any coupon for a period of one year, at the election of the trustee, the principal of all the bonds secured by the instruments should become immediately due and payable. Default was made in the payment of certain interest coupons, the trustee declared the whole amount due and payable, and the question before the court was whether the contract rate of interest continued after default and election by the trustee, or whether the legal rate of 6 per cent. should control. The court said: "Here the obligor by its bond agreed to pay a certain sum of money on December 1, 1989, a period of 100 years from the date of its obligation, and to pay interest upon its debt in the meantime, that is, until December 1, 1989, at the rate of 5 per cent. per annum. It attached to each obligation coupons representing the semi-annual interest at that rate and for that period of time. The stipulation of the trust deed which authorizes the trustee at its election to mature the principal upon default in the payment of interest does not purport to abrogate the rate of interest which the obligor agreed to pay during the stated period. The exercise of the election matured

the principal, but left untouched the stipulation for interest. The rate was agreed upon by the parties to the contract, and was to continue during a stated period of time, and that rate should govern during that period of time, notwithstanding that by the election of the trustee the principal was matured at an earlier date than that specified in the contract. If the stipulated rate was greater than the legal rate, could the trustee, after election to mature the principal, be required to receive only the legal rate of interest? I think it logically follows, from the principle declared by the Supreme Court, that in such case the contract rate would govern, because the parties have agreed upon the rate for the period up to the time specified in the contract as the date of the maturity of the debt. And so, *e converso,* the trustee having exercised the election to mature the debt before the stipulated period of maturity, no one pursuing the debtor under such election can claim other benefit than to secure present payment of that which, without default of the debtor, could not be enforced until the period stipulated in the contract. If, after default and election to mature the debt, the creditor should receive his interest, or a court of equity should relieve from the default, the contract would remain intact in all its provisions. I am satisfied that the default by the debtor and the election by the trustee did not change the stipulation of the contract with respect to the rate of interest, and that the contract rate continued after the debt was matured by the election of this trustee.''

While the exact question here presented was not in that case, we think the argument made by the learned judge unanswerable.

In *Conn. Mutual Life Ins. Co.* v. *Westerhoff,* 58 Neb. 379, 78 N. W. 724, on rehearing, 79 N. W. 731, it was held that a stipulation that the note shall bear a higher, although lawful, rate from a default in the payment of interest, is unenforceable; at least, before the maturity of the note, and that this ''attached something additional to

the amount which was to be paid for the use of the principal sum, not because of any default directly in its payment, but for default in payment of a sum or the sums to be given for its use. The amount to be paid for the use of the principal sum had been definitely fixed, and set forth in terms in both note and mortgage, and the additional amount to be borne because of default in payment of interest was * * * of the nature of a penalty, and will not be enforced."

Appellee cites and relies upon the case of *Ohio Investment Co.* v. *Brown,* 89 Kan. 66, 130 Pac. 665, and says that it is a case on all fours with the case at bar. We do not think so. The clause in the principal note upon which the opinion was based reads as follows: "This note and these coupons are to draw 10 per cent. interest per annum after due or after default of any interest payment, and are secured by a mortgage of even date herewith, on real estate." That is a wholly different clause from the one now under consideration, because there is no provision in this note or in this mortgage that the principal note shall bear 10 per cent. interest "after default." The court correctly held in that case that interest should be computed on the principal note at 10 per cent. after the default had been declared by the bringing of the action.

We have been unable to find any case which, in our judgment, supports appellee's contentions. Being a case of first impression in this State, we are prone to follow the decisions of other courts on the same question, but in so doing we are not holding that parties may not lawfully contract to pay any legal rate of interest on the principal indebtedness after default has been made and declared in accordance with a proper accelerating clause.

The decree of the chancery court is therefore reversed, and the cause remanded with directions to enter a decree in accordance with this opinion.